**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 28 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

ODELL FOX and SHARON FOX,

        Plaintiffs-Appellants,

v.

No. 96-5104

DWIGHT W. MAULDING,
WALTER E. BROWN, JOHN B.
CLARK, MIKE BEZANSON,
MARK A. GISH, WILEY W. SMITH,
C.F. BARTLETT, H.I. BARTLETT,
B.B. BINGMAN, J.M. BINGMAN,
E.D. HAMILTON, L.T. JACKSON,
JR., J.L. ROBERTSON, J.M. DAVIS,
EDWARD A. CARSON,
J.W. SHERWOOD, SECURITY
NATIONAL BANK OF SAPULPA,
a national banking association,
and SECURITY NATIONAL
BANKSHARES OF SAPULPA, INC.,

        Defendants-Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
(D.C. No. 91-C-341-E)

Submitted on the briefs:

John L. Hull, III, and Sandra Lefler Cole, Tulsa, Oklahoma, for Plaintiffs-Appellants.

Gregory L. Mahaffey and Jayne Jarnigan Robertson of Mahaffey & Gore, P.C., Oklahoma City, Oklahoma, for Defendants-Appellees, John B. Clark, Mike Bezanson, Mark A. Gish, Wiley W. Smith, C.F. Bartlett, H.I. Bartlett, B.B. Bingman, J.M. Bingman, E.D. Hamilton, L.T. Jackson, Jr., J.L. Robertson, J.M. Davis, Edward A. Carson, J.W. Sherwood, Security National Bank of Sapulpa, a national banking association, and Security National Bankshares of Sapulpa, Inc.

———————————

Before TACHA, EBEL, and BRISCOE, Circuit Judges.

———————————

EBEL, Circuit Judge.

———————————

Plaintiffs brought the present action against Security National Bank of Sapulpa (SNB), its former Chairman of the Board and CEO, Dwight Maulding, and various other officers and directors, claiming defendants had violated the federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-68, in connection with a series of loans. Plaintiffs also alleged state law claims for fraud, constructive fraud, and intentional infliction of emotional distress. Based on <u>Colorado River Water Conservation District v. United States</u>, 424 U.S. 800 (1976), the district court stayed the federal proceedings in light of what it determined to be parallel proceedings in Oklahoma state court. Once the state proceedings ended, the district court granted defendants' motion to dismiss

-2-

the present action, concluding that the action was barred under the doctrines of claim and issue preclusion.[1]

## 1. Background

In June 1981, plaintiff Odell Fox and Scott Wilmott approached SNB about financing their purchase and development of a piece of real property in Oklahoma. SNB agreed to provide the financing, so long as Maulding could become an equal partner with Fox and Wilmott in the purchase and development of the property. The three men formed a partnership known as Glendale Acres, and so began a long and tortuous relationship between Fox, Maulding, and SNB. Over the course of time, SNB structured and provided the financing for a variety of other real estate deals and an offshoot tire business, in all of which Maulding obtained an interest. The Foxes contend that, due to defendants' fraudulent activities, they were driven further and further into debt, until they ultimately lost everything.

One of the last events in the series of allegedly fraudulent acts by defendants was a $94,000 loan to the Foxes in July 1984. The Foxes needed the additional money to pay off an existing SNB loan that had matured and to provide

---

[1] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

additional capital for the tire business. The Foxes allege that defendants "seized the opportunity to play upon the Plaintiffs' desperation," Appellants' App., Vol. II, Amended RICO Case Statement, at 459, and

> [a]s a continuation of the scheme to defraud the Plaintiffs, Defendants through Maulding represented to Plaintiff, Sharon Fox, that they would need to secure the new loan with a mortgage on the Plaintiffs' home. In an effort to induce the Plaintiffs to enter into the mortgage, Defendants through Maulding represented that they would not ever bring any action to foreclose on the property.

Id., Third Amended Complaint, at 421.

The Foxes ultimately defaulted on the loan and, "in total disregard of the representations and promises and reassurances made," id. at 422, SNB instituted foreclosure proceedings against the Foxes' home in state court in July 1988. The Foxes contend that the loan went into default "[b]ecause of the failure and refusal of Defendants and the Bank to uphold the promise to adequately fund the tire business and the inability of Plaintiffs to achieve capitalization from other lending institutions due to their existing debt load." Id., Amended RICO Case Statement, at 459.

Meanwhile, in 1986, Maulding filed a petition in state court seeking an accounting, dissolution, and winding up of both the partnership with Odell Fox and Scott Wilmott and the corporation that had been formed to operate the tire business. Both Odell and Sharon Fox were parties to this action, as were Scott Wilmott and his wife. In late 1989, while the foreclosure and dissolution actions

-4-

were still pending in state court, Odell Fox, proceeding pro se, filed two additional actions in state court against Maulding and SNB. The first suit alleged claims for conversion and for RICO violations, and the second suit alleged various acts of fraud in connection with the parties' business dealings.

In 1991, the Foxes retained new counsel,[2] who filed the present action in federal court and then entered appearances in the two pro se actions in state court and moved to dismiss them without prejudice. At the time the federal district court stayed the proceedings in this case, SNB had obtained a judgment in its favor in the foreclosure action, but had voluntarily stayed the sale of the Foxes' home pending the outcome of the dissolution action.

Plaintiffs appealed the district court's stay order, but, when the state proceedings ended during the pendency of that appeal, this court dismissed the appeal as moot. Thereafter, the district court dismissed the case, concluding that the present claims were either compulsory counterclaims in the foreclosure action or were actually determined in the partnership dissolution action and, therefore, were barred.

## 2. Preclusive Effects of the State Court Actions

---

[2] The Foxes had been represented in the foreclosure action and the dissolution action by other counsel.

Federal courts must give to state court judgments "the same full faith and credit . . . as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." 28 U.S.C. § 1738. "We must, therefore, ascertain what preclusive effect Oklahoma would give its own decision before we may know what effect it should be given in the federal court." Stifel, Nicolaus & Co. v. Woolsey & Co., 81 F.3d 1540, 1544 (10th Cir. 1996).

Oklahoma follows the familiar doctrines of res judicata (claim preclusion) and collateral estoppel (issue preclusion). Under the former doctrine, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. A judgment acquires the degree of finality requisite for the application of this doctrine after the expiration of appeal time when no appeal has been taken." Panama Processes, S.A. v. Cities Serv. Co., 796 P.2d 276, 283 n.27 (Okla. 1990) (citations omitted). Under the latter doctrine, "once a court has decided an issue of fact or law necessary to its judgment, that issue may not be relitigated between the same parties or their privies in a suit upon a different cause of action." Id.

Oklahoma also has a compulsory counterclaim rule that "parallels exactly the language of Rule 13, Fed. R. Civ. P." Oklahoma Gas & Elec. Co. v. District Ct., Fifteenth Judicial Dist., 784 P.2d 61, 64 n.8 (Okla. 1989). Oklahoma's rule provides that a pleading must state as a compulsory counterclaim "any claim

-6-

which at the time of serving the pleading the pleader has against the opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Okla. Stat. tit. 12, § 2013(A). "Failure to plead a compulsory counterclaim prevents a party from bringing a later independent action on that claim." Oklahoma Gas & Elec. Co., 784 P.2d at 64.

We review de novo the district court's determination that the claims asserted in the present action were compulsory counterclaims in the foreclosure action. Driver Music Co. v. Commercial Union Ins. Cos., 94 F.3d 1428, 1435 (10th Cir. 1996). Because the Oklahoma legislature followed Fed. R. Civ. P. 13(a) in adopting a compulsory counterclaim rule, Oklahoma courts look to federal cases for guidance in applying the rule, see, e.g., Oklahoma Gas & Elec. Co., 784 P.2d at 64 n.8; Turner v. FDIC, 805 P.2d 130, 131 (Okla. Ct. App. 1991), and we may do likewise.

We begin by considering whether the present claims "arise[] out of the [same] transaction or occurrence" as SNB's claim in the foreclosure proceeding. Okla. Stat. tit. 12, § 2013(A). "The courts have given the terms 'transaction' and 'occurrence' . . . flexible and realistic constructions in order to effect 'judicial economy', i.e., trial in one action of all related controversies between the parties

-7-

and, of course, the avoidance of multiplicity of suits." Pipeliners Local Union

No. 798 v. Ellerd, 503 F.2d 1193, 1198 (10th Cir. 1974); see also Oklahoma Gas

& Elec. Co., 784 P.2d at 64 ("In view of the beneficent purposes served by this

[compulsory counterclaim] statute, the court is not justified in hindering its use by

an overly restrictive construction."); Moore v. New York Cotton Exch., 270 U.S.

593, 610 (1926) ("'Transaction' is a word of flexible meaning. It may

comprehend a series of many occurrences, depending not so much upon the

immediateness of their connection as upon their logical relationship.").

Rather than attempt to define the terms "transaction" and "occurrence"

precisely,

> most courts . . . have preferred to suggest standards by which the
> compulsory or permissive nature of specific counterclaims may be
> determined: (1) Are the issues of fact and law raised by the claim
> and counterclaim largely the same? (2) Would res judicata bar a
> subsequent suit on defendants' claim absent the compulsory
> counterclaim rule? (3) Will substantially the same evidence support
> or refute plaintiffs' claims as well as defendants' counterclaim? and
> (4) Is there a logical relation between the claim and the
> counterclaim?

Pipeliners Local Union No. 798, 503 F.2d at 1198.

Based upon our review of these factors, we conclude that the claims

asserted in the present action were compulsory counterclaims in the state court

foreclosure action. The issues of law and fact in the present action arise out of

the same debtor/creditor relationship as SNB's claim in the foreclosure action.

Admittedly, the present case involves loans that were not at issue in the foreclosure action. The Foxes, however, have alleged that defendants' fraudulent activities concerning the mortgage are part of an overall pattern of wrongful conduct and also have alleged that both their acquiescence in the mortgage and their ultimate default on the underlying loan resulted from that overall pattern of wrongful conduct.

Moreover, successful prosecution of the Foxes' present claims would impair rights that were established in the foreclosure action. See, e.g., Restatement (Second) of Judgments § 22(2)(b) (1980);[3] Rudell v. Comprehensive Accounting Corp., 802 F.2d 926, 929 (7th Cir. 1986). The Foxes' RICO and pendent state claims challenge the validity of the loan and mortgage at issue in the foreclosure action. Had these claims been raised and substantiated in the

---

[3]     Section 22 of the Restatement (Second) of Judgments provides in pertinent part as follows:

> (2)  A defendant who may interpose a claim as a counterclaim in an action but fails to do so is precluded, after the rendition of judgment in that action, from maintaining an action on the claim if:
>
>  . . .
>
> (b) The relationship between the counterclaim and the plaintiff's claim is such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action.

foreclosure action, they may have been a complete defense to the foreclosure.

See Henry v. Farmer City State Bank, 808 F.2d 1228, 1235 (7th Cir. 1986);

Puff 'N Stuff of Winter Park, Inc. v. Federal Trust Bank, 945 F. Supp. 1523, 1531

(M.D. Fla. 1996).  Further, in their prayer for relief on the two RICO claims, the

Foxes seek recompense for "the value of their appropriated tangible property."

Appellants' App., Vol. II, Third Amended Complaint, at 440, 447-48.  If the

Foxes were to recover these damages, SNB's judgment in the foreclosure action

would be rendered meaningless.  See Henry, 808 F.2d at 1236; Rudell, 802 F.2d

at 930.

The Foxes argue that their failure to raise the civil RICO claims in the

foreclosure action should not bar them from raising the claims here, because they

could not have litigated their RICO claims in state court.  The Foxes filed their

answer in the foreclosure action on October 13, 1988.  At that time, the question

of whether state courts had concurrent jurisdiction over civil RICO claims was

unsettled, and it remained so until January 1990, when the Supreme Court ruled

that state courts do have concurrent jurisdiction over civil RICO claims.  See

Tafflin v. Levitt, 493 U.S. 455, 458 (1990).  The Foxes contend that, because a

federal court in Oklahoma had ruled in 1986 that federal courts have exclusive

jurisdiction over civil RICO claims, see Massey v. City of Oklahoma City, 643

F. Supp. 81, 84 (W.D. Okla. 1986), the Oklahoma state court would not have heard their RICO claims had they been raised in the foreclosure action.

Oklahoma follows the general rule that a claim will not be barred by res judicata if the court in the earlier action did not have jurisdiction to adjudicate the claim. See Wilson v. Kane, 852 P.2d 717, 720 n.11 (Okla. 1993) ("The general rule against splitting a cause of action recognizes an exception where . . . 'formal barriers existed against full presentation of [the] claim in [the] first action.'") (quoting Restatement (Second) of Judgments, § 26(1)(c) and cmt. c (1982)) (emphasis omitted); Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 382 (1985) ("[A] state judgment will not have preclusive effect on a cause of action within the exclusive jurisdiction of the federal courts."). Therefore, if the Oklahoma courts would not have heard the RICO claims had they been asserted in the foreclosure action, then those claims would not be barred by res judicata. See, e.g., Cullen v. Margiotta, 811 F.2d 698, 732 (2d Cir. 1987) (holding that, under New York law, a judgment in an earlier New York case would not bar the litigant's subsequent RICO claims, because New York state courts viewed jurisdiction over RICO claims as exclusively federal).

The Foxes, however, have not demonstrated that the Oklahoma court would not have heard their RICO claims. First, courts "considering the propriety of state-court jurisdiction over any particular federal claim . . . begin[] with the

presumption that state courts enjoy concurrent jurisdiction." Gulf Offshore Co. v. Mobil Oil Corp., 453 U.S. 473, 478 (1981). Second, although some federal district courts had concluded that jurisdiction over RICO claims was exclusively federal, by October 1988, all the circuit court authority indicated that state courts did have concurrent jurisdiction over civil RICO claims. See Lou v. Belzberg, 834 F.2d 730, 738-39 (9th Cir. 1987) (holding that jurisdiction is concurrent), cert. denied, 485 U.S. 993 (1988); Brandenburg v. Seidel, 859 F.2d 1179, 1195 (4th Cir. 1988) (same); County of Cook v. Midcon Corp., 773 F.2d 892, 898, 905 n.4 (7th Cir. 1985) (stating that "[i]t is by no means clear that federal courts have exclusive jurisdiction to hear RICO claims," and casting doubt on sufficiency of rationale used by those courts finding jurisdiction exclusively federal); DuBroff v. DuBroff, 833 F.2d 557, 562 (5th Cir. 1987) (concluding that plaintiff's RICO claims probably could be heard in Texas state court in light of "the great weight of authority in the lower federal courts . . . that RICO claims come within the usual presumption that federal jurisdiction is concurrent and not exclusive," and despite holdings to the contrary by both a federal district court and a state appellate court in Texas).

Finally, there was no controlling authority in October 1988 indicating that Oklahoma courts would not, in fact, exercise jurisdiction over RICO claims. Although one federal district court in Oklahoma had concluded that jurisdiction

-12-

was exclusively federal, this decision would not have been binding on the Oklahoma state courts. See Turpen v. Oklahoma Corp. Comm'n, 769 P.2d 1309, 1315 (Okla. 1988). No Oklahoma court had expressed an opinion on the jurisdictional issue, much less declined to exercise jurisdiction over a RICO claim. As we held in Crocog Co. v. Reeves, 992 F.2d 267, 269-70 (10th Cir. 1993), in the absence of a clear rule against joinder of the federal claim, the plaintiff must at least attempt to litigate his federal claim in state court. Having failed to raise their RICO claims in state court, the Foxes cannot avoid the bar of res judicata on the mere speculation that the Oklahoma court would not have heard them. See id. at 270; Feminist Women's Health Ctr. v. Codispoti, 63 F.3d 863, 869 (9th Cir. 1995) (applying res judicata to RICO claim that plaintiff failed to raise claim in earlier state court action; plaintiff had "no reasonable ground to believe that the Washington court would not exercise jurisdiction over its RICO claims," even though a federal court in Washington had ruled that federal jurisdiction was exclusive, and, therefore, plaintiff was required to "test the matter through the state courts"); McCarter v. Mitcham, 883 F.2d 196, 201 (3d Cir. 1989) (applying res judicata to RICO claims that plaintiffs failed to raise in earlier state court action).

The Foxes also argue that their failure to assert the RICO claims in the foreclosure action should not bar the present action because "wrongdoing was

still occurring," Appellants' Reply Br. at 16, after they filed their answer to the foreclosure petition and, therefore, the RICO claims were not yet mature. We are not persuaded. First, the Foxes' argument on this point is completely conclusory. Second, almost all of the wrongful acts alleged in the RICO counts had occurred before the Foxes responded to the foreclosure petition. See Feminist Women's Health Ctr., 63 F.3d at 868 n.4 (rejecting plaintiff's argument that RICO claim was not ripe at time of earlier state court action where "all of the events necessary to support a RICO claim had occurred prior to the end of the state trial"; the subsequent wrongdoing was not essential to the RICO claim).

The Foxes' failure to raise the present claims as compulsory counterclaims in the foreclosure action bars their subsequent assertion against SNB, which was a party to that action, and against those in privity with SNB. See McIntosh v. Limestone Nat'l Bank, 894 P.2d 1145, 1148 (Okla. Ct. App. 1995); Henry, 808 F.2d at 1235 n.6. "A director's close relationship with the corporation will generally establish privity." Lowell Staats Mining Co. v. Philadelphia Elec. Co., 878 F.2d 1271, 1277 (10th Cir. 1989); see also Pedrina v. Chun, 97 F.3d 1296, 1302 (9th Cir. 1996) (concluding that corporate officers named in RICO action were in privity with corporation that was party to earlier action, because officers stood accused of participating in the same wrongdoing with which the corporation was accused in the earlier action).

The Foxes contend that none of the individuals named in the present action are in privity with SNB because "they are being sued in their individual capacities not in their capacities as officers and/or directors of the subject bank." Appellants' Br. at 33 (emphasis omitted). A review of the Third Amended Complaint belies this assertion. In the complaint's litany of alleged wrongdoing against the Foxes, none of the individual defendants are even mentioned by name, with the exception of Maulding, who is described in the Amended RICO Case Statement as "the front man." Appellants' App., Vol. II, Amended RICO Case Statement, at 453. The other defendants are identified in the complaint only as officers or directors of SNB, and are described in the Amended RICO Case Statement as "behind-the-scenes participants." Id. at 474. The allegations against these defendants relate solely to actions taken in their capacities as officers and directors: they stand accused of knowing what Maulding was doing, of participating in certain decisions, and of otherwise ratifying Maulding's and SNB's actions, either explicitly or implicitly through their acquiescence.

A review of the complaint and Amended RICO Case Statement shows that the allegations against Maulding also concern actions taken in his capacity as an officer and director of SNB. The Foxes readily admit in their opening brief on appeal that the wrongdoing of Maulding at issue in this federal action "w[as] perpetrated in his capacity as a banker." Appellants' Br. at 35. The Foxes also

-15-

state that this federal action is founded on the alleged "scheme [Maulding] and his buddies, [the other individual defendants], were able to pull off within the four (4) walls of the Bank." Id.

Because, as the Foxes' pleadings show, all the named defendants are in privity with SNB, the preclusive effect of the state court's judgment in the foreclosure action extends to all these defendants. Having failed to raise the present claims in the state court action, the Foxes are now barred from prosecuting them. This conclusion is dispositive of all other issues raised on appeal.

The judgment of the United States District Court for the Northern District of Oklahoma is AFFIRMED.