**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 10 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

DWIGHT L. GRADY,

        Plaintiff-Appellant,

v.

SHAWNEE PUBLIC SCHOOL
DISTRICT I-93, a political
subdivision of the State of Oklahoma;
JOHN P. BROBERG; JUDY BULL;
RONALD D. DEMPSEY, in his
individual capacity; DALE BEARD,
J.D., in his individual capacity; KIM
PURDOM, in her individual capacity;
CHERYL WRIGHT, in her individual
capacity; ERIC HOPKINS, D.D.S., in
his individual capacity,

        Defendants-Appellees.

No. 98-6099
(D.C. No. CIV-96-2006-T)
(W.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **BALDOCK** , **EBEL** , and **MURPHY** , Circuit Judges.

---

\*     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Plaintiff Dwight L. Grady appeals from the district court's grant of summary judgment in favor of defendants on his claims of retaliation. We exercise jurisdiction under 28 U.S.C. § 1291, and affirm.

## I. Background

Plaintiff was employed as an administrator for the Shawnee Public Schools ("Shawnee") in September 1989, first as an elementary school principal, and then as a high school assistant principal. Defendant John Broberg is the superintendent of schools for Shawnee. Plaintiff's employment with Shawnee was rocky almost from the start. On November 18, 1991, Broberg proposed a ten-day suspension for plaintiff because he could not get along with one of his teachers and because he had been uncooperative and insubordinate. See App. Vol. II at 225-26. The next day, plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging that Broberg had harassed and retaliated against him since December of 1990 because of his age. See id. at 224. He claimed that the harassment was a plot to keep him from retiring in four years and so that Broberg could hire a younger person for the

position.  See id. at 227.  Plaintiff voluntarily withdrew the charge in January of 1992.  See id. at 230.

Plaintiff then had problems with his secretary, and in March 1993 Broberg gave plaintiff a written reprimand for personally contacting a school board member to discuss the problem, for ignoring instructions to only send memos to the board about personnel problems, and for seeking to have his secretary transferred without first using the evaluation process.       See id. at 244.  Broberg gave plaintiff a negative performance evaluation in 1994, identifying four areas in which plaintiff needed improvement.     See id. at 248.

During 1993 and 1994, plaintiff was active in organizing a union for administrators and became its first president.  Brenda Hodges, the principal of Shawnee High School, was also a union organizer and became its second president.  In March of 1993, Broberg made a comment at a principals' meeting attended by both plaintiff and Hodges that he was opposed to administrator unionization.   See id. Vol. III at 588.

In 1994 Broberg transferred plaintiff to an assistant principal's job at the high school where Hodges served as principal.  His reasons for reassigning plaintiff were that he perceived parent involvement at plaintiff's elementary school to be low, that Broberg was upset at plaintiff's reaction to and attitude regarding his 1994 evaluation, and that he thought that plaintiff should have a

new reviewing official evaluate plaintiff's performance. See id. Vol. II at 246-47. Plaintiff was given the same salary and benefits.

In June 1994 plaintiff filed a second EEOC charge of retaliation based upon the reprimand, the negative performance evaluation, and the transfer. See id. at 501-03. In November 1994 he filed suit against the school district and Broberg, alleging that Broberg retaliated against him for filing his first EEOC complaint in 1991 in violation of the Age Discrimination in Employment Act ("ADEA") and the First Amendment, and for participating in unionization activities. See id. at 214, 216-17, 218-19. The district court granted summary judgment for the school district and Broberg, finding as a matter of law that the 1993 reprimand was too remote from the 1991 EEOC charge to be causally connected. See id. at 245. The court further found that the school district and Broberg had articulated a legitimate, nondiscriminatory reason for the reassignment to the high school and that plaintiff had failed to present any evidence of pretext. See id. at 247. The court also found that plaintiff had failed to offer evidence to refute Broberg's nondiscriminatory reasons for the negative 1994 employment evaluation. See id. at 248. Plaintiff dismissed his appeal from the court's judgment on January 3, 1996. See id. at 251.

The allegations that formed the basis of the 1994 lawsuit that were rejected by the district court in 1996 may not serve as "evidence" for summary judgment

purposes in this case, and the court's findings are binding on the parties. See Fox v. Maulding , 112 F.3d 453, 456 (10th Cir. 1997) (noting that Oklahoma applies the doctrine of collateral estoppel, which provides that "once a court has decided an issue of fact or law necessary to its judgment, that issue may not be relitigated between the same parties or their privies in a suit upon a different cause of action") (quotation omitted).  Therefore, we reject plaintiff's argument that the "historical context" revealed by the prior charges and litigation shows an "ongoing and progressively worsening pattern of retaliatory conduct and adverse employment actions that the School District has visited upon [plaintiff]." Appellant's Br. at 3 n. 1.  Plaintiff's claims must stand or fall on only those incidents occurring subsequent to August of 1994.

Plaintiff's situation did not improve in 1994 after he began work at the high school with Ms. Hodges, who had been his comrade and associate in organizing the administrator's union.  Plaintiff alleges that at the beginning of the 1995 school year, at the direction of Broberg, Hodges replaced many of his leadership job responsibilities with menial tasks.  See App. Vol. II at 314.  He states, however, that "it did not bother me that I was now being taken out of all leadership decision-making process [sic]," id. , and he did not object to the change in job assignment.  See id. Vol. III at 538.  Hodges found it difficult to work with plaintiff and testified that she "had not seen anyone in education for

this period of time that lacked as many skills as [plaintiff] did." Id. Vol. II at 395. She further testified that she changed plaintiff's responsibilities after plaintiff informed her that "he felt very strongly that he would win the [1994] lawsuit . . . and would not be at the high school" for very long in 1995. Id. at 360. Plaintiff did not dispute this testimony. Because plaintiff insists that Hodges told him that Broberg made the decision to change plaintiff's job assignment, see id. at 314, but Hodges testified that it was her decision alone and that she had never talked to Broberg about the changes before she made them, see id. at 376, there is a genuine issue in this regard. However, it is not an issue of material fact that controls whether summary judgment was properly granted. Hodges testified, and plaintiff does not disagree, that the new duties assigned to plaintiff were all within the realm of duties of an assistant principal, see id. at 359, 362, and plaintiff admits that he was agreeable to the change in assignments. As a matter of law, this was not an adverse employment action that can provide support for a claim of retaliation or discrimination.

On March 27, 1996, Hodges gave plaintiff an evaluation for the 1995-96 school year that stated that plaintiff needed improvement in nine areas. She also stated that plaintiff frequently did not fulfill the contractual day attendance requirements. See id. at 482-89. After receiving the evaluation, Hodges testified that plaintiff became "angry, critical, hostile, threatening, [and] intimidating" to

her in a conference held on March 29. Id. at 382, 493. He threatened to tell other administrators "how the staff had no respect for [her], how [her] staff did not support [her]", and that she "needed to think about changing these [negative] areas" of the evaluation. Id. at 382. Hodges refused to change the evaluation. See id. at 384. On April 1, 1996, plaintiff filed a third EEOC complaint alleging that he was being subjected to retaliation for filing his 1994 EEOC complaint and was being discriminated against because he was a male and because of his age. See id. Vol. I at 70-71. He complained that in January 1996 he was embarrassed and degraded by unfounded comments made by Broberg to his co-workers and that he had been subjected to unequal terms and conditions of employment because of the job assignment changes. See id. at 70.

Despite the negative evaluation and her difficulties in working with plaintiff, Hodges had already recommended plaintiff's reemployment with the district. See id. Vol. II at 386. The school board approved a new contract for plaintiff for the 1996-97 school year on April 2, 1996. See id. at 431. Hodges testified that by May, however, she believed she had "exhausted my avenues of working with Dr. Grady and I did believe that it would be necessary that I make a recommendation for termination." Id. at 402, 398.

Aware of the conflicts between plaintiff and Hodges and other administrative personnel at the high school, see id. at 422-23, 481, in mid-April

Broberg had asked plaintiff to transfer to a position of librarian at another high school and also inquired whether plaintiff was still interested in an early retirement.   See id. at 329, 339, 402.  Plaintiff refused the transfer and declined to retire early.  Hodges testified that, in the middle of May, she determined that plaintiff should be terminated after having a conversation with plaintiff in which he stated that "he would remain as an employee of the district for the next ten years or as long as his health held out and he would do nothing and let the district pay him."  Id. at 397, 398.  In his summary judgment evidence, Plaintiff does not dispute her testimony.  Hodges then prepared a letter to Broberg formally recommending plaintiff's termination.  In it she listed three reasons:  his "failure to respond to the guidance provided in his evaluation; his failure to fulfill his assigned daily work hours; and his inability to work with the administrative staff or to fulfill his assigned duties."     Id. at 476.  She noted that her mutual involvement in the union with plaintiff and her sense of loyalty to a fellow union member had intensified her efforts to work cooperatively with plaintiff, but recommended that he not be reassigned to another position because she believed that he would "continue to avoid responsibility, threaten those who disagree with him or dare to evaluate him . . . and would make charges of discrimination against anyone who honestly sought to correct his deficiencies."     Id. at 477.  Broberg concurred with Hodges' recommendation and recommended plaintiff's dismissal

to the school board.  See id. at 473.  After seventeen hours of hearings in which plaintiff had the opportunity to testify, call witnesses, and cross-examine Broberg and Hodges, the board voted to terminate plaintiff's employment.  See id. at 526, 454-55.  Hodges was no longer employed by the Shawnee schools at the time she testified at the hearing.  See id. at 353.

Plaintiff then filed another EEOC charge on August 19, 1996, alleging that his termination was the result of retaliation for filing his 1994 and April 1996 charges, for his union affiliation, and because of his age.  See id. Vol. I at 76.  In this lawsuit, however, he does not allege age discrimination as a separate claim. See id. Vol. II at 210-22.

## II.  Applicable legal standards

We review the district court's grant of summary judgment de novo.  See McKnight v. Kimberly Clark Corp. , 149 F.3d 1125, 1128 (10th Cir. 1998).  In conducting that review,

> [w]e examine the record to determine whether any genuine issue of material fact was in dispute; if not, we determine [whether] the substantive law was applied correctly, and in so doing we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion. However, where the non-moving party will bear the burden of proof at trial on a dispositive issue, that party must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment.

Id. (quotations and citations omitted). The movant need not negate the nonmovant's claim, but need only point to an "absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). "[I]t is not enough that the nonmovant's evidence be 'merely colorable' or anything short of 'significantly probative.'" Committee for the First Amendment v. Campbell, 962 F.2d 1517, 1521 (10th Cir. 1992). There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Title VII makes it an unlawful employment practice "for an employer to discriminate against any of his employees . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). We examine plaintiff's retaliation claims using the three-stage analysis outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). See Richmond v. ONEOK, Inc., 120 F.3d 205, 208 (10th Cir. 1997). Thus, in order to prevail in a retaliation suit,

> the plaintiff initially must establish a prima facie case [of retaliation]. The burden [of production] then shifts to the employer to offer a legitimate non-retaliatory reason for the plaintiff's termination. If the employer offers such a reason, the burden then shifts back to the plaintiff to show that there is a genuine dispute of

material fact as to whether the employer's proffered reason for the challenged action is pretextual.

Id. (quotations and citations omitted). A prima facie case of retaliation is established on a showing of: "(1) protected opposition to discrimination or participation in a proceeding arising out of discrimination; (2) adverse action by the employer; and (3) a causal connection between the protected activity and the adverse action." Sauers v. Salt Lake County, 1 F.3d 1122, 1128 (10th Cir. 1993).

For retaliation cases based on protected First Amendment activity, to establish a "causal connection," the plaintiff must show that engaging in the protected activity was a substantial or motivating factor in the adverse employment action. See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977). If the employee establishes the prima facie case, the burden then shifts to the employer to produce evidence that it would have made the same decision in the absence of the protected activity. See id.

"Pretext . . . may be established by showing either that a discriminatory reason more likely motivated the employer or . . . that the employer's proffered explanation is unworthy of credence." McKnight, 149 F.3d at 1129 (quotation omitted). Pretext is demonstrated by showing "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions." Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997) (quotations omitted).

-11-

In this case, defendants argued below, and the district court agreed, that plaintiff could not show that engaging in unionization activities protected by the First Amendment was a motivating factor in his termination.     See App. Vol. II at 197-201; id. Vol. III at 652. In regard to his retaliation claim for filing a discrimination charge with the EEOC, defendants asserted, and the court concluded, that plaintiff could not make out a prima facie case of retaliation.     See id. Vol. II at 193-94;   id. Vol. III at 653. Alternatively, defendants argued and the court held that plaintiff could not show that the reasons stated for plaintiff's termination were a pretext for retaliation.     See id. Vol. II at 194-97;   id. Vol. III at 655-57. The issues before us are the same as they were in the district court: whether plaintiff met his burden of producing either (1) evidence that defendants based their adverse employment decisions on plaintiff having filed EEOC charges or on his unionization activities, or (2) evidence that the defendants' proffered explanations for his termination were merely a pretext. We conclude he did not meet either burden.

### III. EEOC retaliation claim

Plaintiff argues that the causal connection between his protected activity of filing the April 1996 EEOC charge and Hodges' June 1996 recommendation of termination may be established simply by the facts that the recommendation closely followed the filing of the charge,     see Burrus v. United Tel. Co. of Kan.,

-12-

Inc., 683 F.2d 339, 343 (10th Cir. 1982), and there was continuing friction between the parties, see Chavez v. City of Arvada, 88 F.3d 861, 866 (10th Cir. 1996). We agree that close temporal proximity between a protected activity and an adverse employment action may be enough evidence of causal connection to survive summary judgment in regard to establishing the prima facie case. We conclude, however, that defendants presented overwhelming evidence of legitimate nonretaliatory reasons for Hodges' recommendation of termination and the school board's decision to terminate, and plaintiff presented no probative evidence on which a jury could find that those reasons were pretextual.

When a defendant presents evidence of legitimate reasons for adverse actions, as Hodges did in this case, a plaintiff cannot just sit back and remain silent or make conclusory statements that the witness was generally being "untruthful"--he must refute each allegation with his version of the facts or with other countervailing evidence. The record is clear and undisputed that plaintiff's difficulties and conflict with defendants began before the first EEOC charge was filed. Further, Hodges' negative employment evaluation occurred before, not after, the 1996 EEOC charge was filed, and there had been no previous claim that she participated in age or unionization discrimination. Plaintiff therefore can hardly say that the negative evaluation was the product of retaliation. Hodges also presented written documentation of dates and times during which she

observed that plaintiff failed to fulfill his contractual day. Plaintiff cannot sufficiently refute that evidence by simply saying "she did not tell the truth at that due process hearing." App. Vol. II at 315; see id. at 319. "To survive summary judgment, non-movant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient." Murray v. City of Sapulpa, 45 F.3d 1417, 1422 (10th Cir. 1995) (quotations omitted). Further, even if Hodges was mistaken in her perceptions of plaintiff's skills and performance, plaintiff has raised no question of Hodges' sincerity regarding her evaluation of plaintiff's abilities nor of her feelings that she could no longer work with plaintiff. Cf. McKnight, 149 F.3d at 1129 (holding that if employer actually believed plaintiff committed claimed sexual assault, its proffered reason for termination was not pretextual, even if later shown to be erroneous).

Plaintiff argues that because Hodges gave him some acceptable ratings before he filed his claim but recommended termination afterwards, that is evidence of pretext. Plaintiff disregards, however, the adversarial conference and exchanges of memos and Hodges' undisputed testimony that he personally attacked her credibility and abilities after the evaluation was prepared. It is not inconsistent to recognize that an employee's performance may be acceptable in some areas and totally unacceptable in others.

-14-

Plaintiff also argues that the fact that Hodges did not give him a formal and separate plan of development prior to terminating his employment as allegedly required by the collective bargaining agreement is evidence of pretext. We fail to see the connection between the alleged fact and plaintiff's assertion. We conclude that the district court appropriately granted summary judgment in favor of defendants on plaintiff's EEOC retaliation claims.

## IV. First Amendment retaliation claim

Plaintiff's claim that his involvement in union activities was a motivating factor in his termination also appropriately did not survive summary judgment. The recommendation for termination undisputedly came from Hodges, who was at that time the president of the administrator's union. At the time she testified, she was no longer affiliated with the Shawnee schools, nor was she under the supervision of Broberg. There is absolutely no evidence that any of the school board members, who made the final decision regarding termination, individually or as a group opposed union efforts. Based on the evidence, no rational jury could find that the board would not have terminated plaintiff in the absence of his union activities.

The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.

Entered for the Court

Bobby R. Baldock
Circuit Judge