FILED
**United States Court of Appeals**
**Tenth Circuit**

**December 16, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

ANN ELAINE CAMPBELL,

       Plaintiff - Appellant,

v.

CITY OF SPENCER, an Oklahoma municipality; TOWN OF FOREST PARK, an Oklahoma municipality; and BLAZE'S TRIBUTE EQUINE RESCUE, INC., an Oklahoma corporation,

       Defendants - Appellees,

No. 14-6015

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. No. 5:09-CV-00821-HE)**

_____

Larry E. Finn (H. Craig Pitts and Daniel G. Couch on the briefs), Rubenstein & Pitts, P.L.L.C., Edmond, Oklahoma, for Plaintiff-Appellant.

W. Brett Behenna (David W. Lee and Emily B. Fagan, Lee Law Center, P.C., Oklahoma City, Oklahoma and Philip W. Anderson, Collins Zorn & Wagner, Oklahoma City, Oklahoma, and Eddie Wayne Jackson, Oklahoma City, Oklahoma on the brief) for Defendants-Appellees.

_____

Before **TYMKOVICH**, **EBEL**, and **PHILLIPS**, Circuit Judges.

_____

**PHILLIPS,** Circuit Judge.

The City of Spencer ("Spencer"), the Town of Forest Park ("Forest Park"), and Blaze's Tribute Equine Rescue ("Blaze")[1] (collectively the "Municipalities"), acting under a search warrant, seized 44 horses from Ann Campbell's properties. After a forfeiture hearing, a state district court in Oklahoma issued an order granting Spencer and Forest Park's joint forfeiture petition. Campbell later sued the Municipalities in federal court under 42 U.S.C. § 1983. The district court dismissed Campbell's complaint, applying both claim and issue preclusion to prevent relitigation of matters common to the state court forfeiture proceeding. Campbell appeals.

The district court properly dismissed Campbell's § 1983 claims against the Municipalities. Because Campbell could have raised her constitutional claims in the forfeiture proceeding but did not do so, and because our allowing her to raise these claims now would impair the Municipalities' rights established in that proceeding, we hold that the district court properly concluded that claim preclusion disallowed Campbell from pursuing her constitutional claims now. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm the district court.

---

[1] Blaze is a nonprofit corporation that rescues, rehabilitates, and adopts out horses. The parties agree that Blaze participated in the execution of the search warrant on July 31, 2007, and was a state actor for Fourth Amendment purposes. Forest Park and Spencer transferred their interests in the horses to Blaze in September and October 2007.

I.

Campbell kept horses on parcels of land she owns in two Oklahoma municipalities, Spencer and Forest Park. In response to citizens' complaints, Spencer Police Chief Bill Ward and Oklahoma County Sheriff's Office Deputy John Cothran went to 9912 NE 43rd St. in Spencer, where they saw ten horses in an "extremely malnourished and grossly emaciated" condition. Appellant's App'x at 106–07. The officers saw no food or water for the horses. Chief Ward and Deputy Cothran also went to 4303 North Douglas Blvd. in Spencer where they saw twelve horses that appeared malnourished, emaciated, and in need of medical attention. Finally, Chief Ward, Deputy Cothran, and Officer John LeMasters went to 23 Oakwood Drive in Forest Park, where they saw eight more horses, two appearing malnourished. Upon her arrival, Campbell spoke to Deputy Cothran and Chief Ward and consented to a welfare check of her horses kept on her 23 Oakwood Drive property. During this check, they saw seventeen more horses in a barn, six in "totally emaciated conditions." *Id.* at 107.

Based on this first-hand knowledge, Deputy Cothran submitted a search-warrant affidavit to the Oklahoma County District Court, seeking permission to search Campbell's property at 23 Oakwood Drive in Forest Park and to seize any abused or neglected horses found there. The state district court issued the warrant.

Acting under the warrant, law enforcement officers, accompanied by Blaze employees, went onto three separate parcels of Campbell's property—only one of which was listed in the search warrant—and seized 44 horses. Blaze took physical possession of the horses.

On August 6, 2007, Spencer and Forest Park filed a joint petition in Oklahoma County District Court, seeking to forfeit the horses under an Oklahoma statute that allows for that remedy in animal abuse cases. Okla. Stat. tit. 21, § 1680.4(C)(1). The state court held a hearing on the petition and found that "after hearing the testimony of the parties and after reviewing the exhibits and evidence . . . probable cause exists that the 44 horses were in an abusive and neglected situation." Appellant's App'x at 123. The court granted the forfeiture petition. Campbell appealed the forfeiture, but the Oklahoma Court of Civil Appeals affirmed, and the Oklahoma Supreme Court denied certiorari.[2] Never in the state court proceedings did Campbell raise any Fourth Amendment issues about the search warrant or the scope of its execution.

Campbell then filed an action under § 1983 against the Municipalities in the United States District Court for the Western District of Oklahoma.[3] She claimed

_____

[2] Forest Park and Spencer's request for judicial notice is granted.

[3] In addition to the Fourth Amendment claims we address in this appeal, Campbell also raised claims under the Fifth and Eighth Amendments. However, the district court dismissed these claims under the *Rooker-Feldman* doctrine, *see Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923), and we affirmed the district court in *Campbell v. City of Spencer*,

that the Municipalities, including Blaze acting as a state actor, had violated the Fourth Amendment in two ways. First, she said that the officers had withheld material information from Deputy Cothran that should have been included in his search warrant application. In particular, Campbell claimed that she and the officers had agreed to a "plan to reduce the number of horses to manage the situation." Appellant's Br. at 18. Second, she asserted that the Municipalities had exceeded the scope of the search warrant when they searched locations apart from the 23 Oakwood Drive property.[4]

Spencer and Forest Park each filed motions to dismiss the § 1983 claims on preclusion grounds. The court granted the motions, concluding that the doctrines of issue and claim preclusion barred the relitigation of Campbell's alleged Fourth Amendment violations underlying her § 1983 claims. Blaze then filed a motion for summary judgment opposing the Fourth Amendment claims; the district court also granted that motion on preclusion grounds.

---

682 F.3d 1278 (10th Cir. 2012). In the previous appeal, we held that the *Rooker-Feldman* doctrine did not bar Campbell's Fourth Amendment claims, and we remanded those claims to the district court. Campbell then filed an amended complaint, which asserted § 1983 claims only under the Fourth Amendment. That brings us to this appeal. In her amended complaint, Campbell also raised a state law defamation claim against Blaze, but that claim is not part of this appeal.

[4] Campbell does not raise this second basis to us at any point in her briefing, and we therefore do not consider its merits.

Campbell appeals to this court, arguing that neither issue nor claim preclusion bars her § 1983 claims. The Municipalities disagree and ask that we affirm the district court's order on issue and claim preclusion grounds or, alternatively, on the ground that Campbell has failed to state a claim for relief under § 1983.

We review de novo the district court's grant of the Municipalities' motion to dismiss on issue and claim preclusion grounds. *See Wilkes v. Wyo. Dep't of Emp't Div. of Labor Standards*, 314 F.3d 501, 503 (10th Cir. 2002). In reviewing the district court's grant of summary judgment for Blaze, we review de novo that decision and apply the same standard used by the district court. *See Bohn v. Park City Grp., Inc.*, 94 F.3d 1457, 1460 (10th Cir. 1996). We must view the factual record and make reasonable inferences from it in the light most favorable to the party opposing summary judgment. *Id.* We will uphold the district court's grant of summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## II.

"To succeed in a § 1983 claim against a municipality, a plaintiff must show two elements: '(1) a municipal employee committed a constitutional violation, and (2) a municipal policy or custom was the moving force behind the constitutional deprivation.'" *Cordova v. Aragon*, 569 F.3d 1183, 1193 (10th Cir.

2009) (quoting *Walker v. City of Orem*, 451 F.3d 1139, 1152 (10th Cir. 2006)). "[I]t is a Fourth Amendment violation to 'knowingly or recklessly omit from the [search warrant] affidavit information [that], if included, would have vitiated probable cause.'" *Taylor v. Meachem*, 82 F.3d 1556, 1562 (10th Cir. 1996) (quoting *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996)). Furthermore, the Fourth Amendment requires that warrants particularly describe the place to be searched and prohibits officers executing the warrant from exceeding the warrant's scope. *See United States v. Angelos*, 433 F.3d 738, 745–46 (10th Cir. 2006).

All of the constitutional violations that Campbell has alleged stem from the Municipalities' search of her properties and the seizure of her horses, all occurring before the forfeiture proceeding. During the forfeiture proceeding, the state district court relied in part on evidence obtained from the searches of Campbell's property and the seizure of her horses to establish probable cause that Campbell's horses had been neglected. Campbell now argues that this evidence was illegally obtained. In response, the Municipalities have raised claim preclusion, also known as res judicata, as an affirmative defense to Campbell's § 1983 claims. They argue that Campbell's failure to raise her constitutional claims in the forfeiture proceeding defeats her ability to do so now. Under claim preclusion, "a final judgment on the merits of an action precludes the parties or their

privies from relitigating issues that were or *could have been raised* in the prior action." *Wilkes*, 314 F.3d at 503–04 (emphasis in original) (quoting *Satsky v. Paramount Commc'ns, Inc.*, 7 F.3d 1464, 1467 (10th Cir. 1993)) (internal quotation marks omitted); *see also Black's Law Dictionary* 1504 (10th ed. 2014) (defining res judicata).

Federal courts must give a state court judgment the same preclusive effect as would its originating state. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *Fox v. Maulding*, 112 F.3d 453, 456 (10th Cir. 1997). Oklahoma's claim-preclusion doctrine bars a claim when (1) the party asserting the claim could have raised it as a defense in the first case, and (2) success on the later claim would nullify the first judgment or impair the rights established in it. *Fox*, 112 F.3d at 457–58; *see also Copeman v. Ballard*, 214 F. App'x 739, 741 (10th Cir. 2007) (unpublished).

Parties can seek to exclude evidence in civil proceedings in Oklahoma if the evidence was obtained unconstitutionally. *Turner v. City of Lawton*, 733 P.2d 375, 379–80 (Okla. 1986); *Brumfield v. Oklahoma*, 155 P.3d 826, 833 (Okla. Crim. App. 2007) ("In *Turner v. City of Lawton*, the Oklahoma Supreme Court, in a civil case, traced the development of the exclusionary rule for illegally obtained evidence, both in Oklahoma and under the U.S. Constitution, and concluded that . . . the Oklahoma Supreme Court had incorporated the exclusionary rule into Oklahoma law.").

Moreover, the United States Supreme Court has held that the exclusionary rule applies in state civil forfeiture proceedings. *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 700–02 (1965). A party can argue to apply the exclusionary rule in the state forfeiture proceeding to exclude from the court's forfeiture consideration illegally obtained evidence. *Id.*; *see also Frazee v. I.R.S.*, 947 F.2d 448, 450 (10th Cir. 1991) ("[T]he legality of a seizure may be tested in a judicial forfeiture."); *Copeman*, 214 F. App'x at 742 (recognizing that under Oklahoma law, the legality of a search or seizure may be tested in a forfeiture proceeding).

We therefore conclude both that constitutional issues can be litigated and that the exclusionary rule applies in Oklahoma state forfeiture proceedings. *See generally Pennzoil Co. v. Texaco*, 481 U.S. 1, 15 (1987) ("[W]hen a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume the state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary."); *Jones v. Whittington*, No. CIV–11–0861–HE, 2013 WL 4501343, at *3 (W.D. Okla. Aug. 21, 2013) (unpublished) ("Plaintiff has not [negated] the possibility that he could have raised his claims in the state case. The state district court is a court of general jurisdiction. While the civil forfeiture proceeding involved here might be viewed as a sort of special proceeding, rather than a 'case' in the traditional sense,

neither party has pointed to any authority suggesting claims against the sheriff could not have been raised there or that state pleading or substantive rules would necessarily prevent it.").

## III.

Initially, we conclude that the forfeiture order and related appeal was a final adjudication on the merits assigning the legal property rights for Campbell's horses. Accordingly, we must determine whether Campbell could have raised her Fourth Amendment claims in the forfeiture proceeding. If she could have, we must next determine whether success on her claims in this case would either nullify the forfeiture proceeding or impair the rights established in it. *See Fox*, 112 F.3d at 457–58.

We conclude that Campbell could have raised her Fourth Amendment claims in the state forfeiture proceeding.[5] A forfeiture proceeding is "[a]n in rem

---

[5] In her briefing to us, Campbell bases her constitutional claims in part on her right to the "plan" the parties supposedly agreed to before Spencer and Forest Park executed the search warrant. She says, "In the present case, the Oklahoma statute provides that Spencer and Forest Park could **either** set forth the terms that Campbell could keep the horses, which they did, or obtain a court order for removal of the horses, which they also did, in violation of Campbell's clearly established right." Appellant's Br. at 23 (emphasis in original). She goes on, "Campbell has alleged that she had a constitutional right, under Title 21, Section 1680.4 of Oklahoma law and the Fourth and Fourteenth Amendments to the United States Constitution to abide by the terms and conditions of the agreement entered into on July 28, 2007, between Campbell and Spencer, pursuant to 21 O.S. § 1680.4(B)(1)." *Id.* at 23–24. She cites to her amended complaint during this discussion. She discusses these claims in an attempt to persuade us that she has stated a claim for

proceeding brought by the government against property that either facilitated a crime or was acquired as a result of criminal activity." *Black's Law Dictionary* 765 (10th ed. 2014) (defining civil forfeiture). Here, the criminal act alleged was animal abuse under Okla. Stat. tit. 21, § 1685, which says that "[a]ny person who shall willfully or maliciously . . . deprive any such animal of necessary food, drink, shelter, or veterinary care to prevent suffering . . . shall be guilty of a felony." Neglected or abused animals are subject to forfeiture under a related statute, which provides as follows:

> After an animal has been seized and prior to any charges being filed, the agency that took custody of the animal shall, within seven (7) days from the date of seizure, petition the district court in the county in which the animal was seized for a bond hearing to determine the cost and care for the animal. . . . If the court finds that probable cause exists that an animal has been abused, the court may order immediate forfeiture of the animal to the agency that took custody of the animal.

*Id.* § 1680.4(C)(1).

Campbell argues that in the forfeiture proceeding:

---

which relief can be granted. As we explain below, we do not reach the issue of whether she has adequately stated a claim for relief because we conclude that her claims are precluded. But just to be clear, to the extent Campbell is now asserting additional constitutional rights based either on the Fourteenth Amendment or the Oklahoma statute, those are unpreserved issues that she did not raise below in her amended complaint. In her complaint, she only relied on the Fourth Amendment. On appeal, she does not argue for plain error and its application. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130–31 (10th Cir. 2011). Accordingly, she would have waived these additional possible claims, and we do not consider them for our claim preclusion analysis.

(1) there was no true examination of the propriety of the warrant and the seizure . . . [;](2) there was no examination of whether that [sic] Forest Park and Spencer failed to fully inform the Oklahoma County Sheriff's Department of material evidence . . . [;] and (3) there was no examination of whether the warrant and the forfeiture proceeding were brought because of Forest Park's and Spencer's unconstitutional policy to seize and take Campbell's property, i.e., her horses.

Appellant's Br. at 17.

Campbell conflates the doctrines of claim preclusion and issue preclusion. While the concerns she raises are relevant when determining whether issue preclusion bars a later claim, they are not relevant for claim preclusion. "Whether Plaintiff actually challenged the lawfulness of the property's seizure in those proceedings is irrelevant. The point is [she] should have if [she] did not because . . . Plaintiff 'ha[d] an adequate remedy in state court.'" *Copeman*, 214 F. App'x at 742 (quoting *United States v. Copeman*, 458 F.3d 1070, 1073 (10th Cir. 2006) (alteration in original)). "That remedy is adequate because *the legality of a seizure may be tested in a judicial forfeiture.*" *Id.* (emphasis in original) (quoting *Frazee*, 947 F.2d at 450) (internal quotation marks omitted) (citing *United States v. Akers*, 215 F.3d 1089, 1106 (10th Cir. 2000)). "A remedy may still be adequate, even if imperfect." *Copeman*, 458 F.3d at 1073.

Campbell makes three arguments against claim preclusion. First, she argues that this court decided the preclusion issue when we first heard an appeal in this case. *See Campbell v. City of Spencer*, 682 F.3d 1278 (10th Cir. 2012). She

- 12 -

argues that we have already concluded that "there was insufficient evidence to support a dismissal based on preclusion principles then" and that "the same should hold true in this appeal." Appellant's Br. at 25. Campbell is incorrect. In fact, in the previous appeal, we said, "Although a federal-court judgment in her favor on the Fourth Amendment claims may be inconsistent with the state-court judgment, that is a matter of preclusion doctrine . . . ." *Campbell*, 682 F.3d at 1285. We went on to conclude that her Fourth Amendment claims were not barred by the *Rooker-Feldman* doctrine. *Id.* (applying *Rooker v. Fid. Trust Col.*, 263 U.S. 413 (1923) (barring federal courts from engaging in appellate review of state-court judgments)). We remanded the case to the district court to specifically determine the validity of her remaining Fourth Amendment claims. Accordingly, we reject this argument.

Campbell next argues that "the extent of the wrongdoing was unknown at the time of the state forfeiture hearing." Appellant's Br. at 13. We conclude that she has waived this argument. We have held that an appellant waives an argument if she fails to raise it in the district court and has failed to argue for plain error and its application on appeal. *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130–31 (10th Cir. 2011). In the district court, Campbell never argued that she could not have raised her Fourth Amendment claims because she did not know the extent of the wrongdoing. She argued only that there was not a final determination about

the constitutionality of the Municipalities' actions. And on appeal, she does not argue for plain error and its application. Campbell has waived any argument regarding her knowledge of the extent of the wrongdoing.

Nor are we persuaded that the district court refused to let Campbell raise the issue of the legality of the search and seizure. For this proposition, Campbell directs us to a point in the proceeding where the presiding judge said:

> I don't want to interrupt you, Counsel, and I apologize, but we're not here on cruelty. What we're on, the statute says, [is] abused. Now, it may be a matter of semantics and 'tomato,' 'tomato,' but the issue today in my mind is not, does this situation rise to a cruelty to animal charge. That's for the district attorney to decide, not me at this point. What I'm here to decide today is, using the wording from the statutes is, whether or not probable cause exists that these animals have been abused.

Appellant's App'x at 253–54. The judge's statement simply does not support Campbell's argument that the court prevented the parties from discussing the legality of the evidence presented.[6] Before and after this statement, the parties and the court were discussing the facts establishing the neglect to the horses, and the court was explaining that it did not need to reach the issue of Campbell's guilt under the related criminal statute. It was explaining that it was only tasked with

---

[6] The Oklahoma Court of Civil Appeals seems to have understood this statement similarly. In its opinion, the court explained, "At the conclusion of the hearing, the trial court noted the statute requires the City to prove probable cause exists that the horses were abused, and not the higher standard that the horses were subjected to 'animal cruelty.'" *Town of Forest Park v. Campbell*, No. 105,087 (Okla. Civ. App. June 12, 2008) (unpublished); Appellant's App'x at 131.

determining whether it had sufficient evidence to establish probable cause of neglect to forfeit the horses. Had Campbell raised her Fourth Amendment arguments in the forfeiture proceeding, the state court would have been free to consider whether to suppress evidence from the search warrant. But she chose not to do so.

At oral argument, Campbell acknowledged that she could have presented evidence regarding the legality of the search and seizure during the forfeiture proceeding and attempted to introduce evidence showing that the Municipalities had violated her constitutional rights. After being asked whether she could have presented evidence, she explained, "I believe that is correct, that evidence could have been brought in, that it could have been presented to the district court judge. But what I would say on that proposition is [that] this was a probable cause hearing, not to test the validity of the warrant but to determine whether or not there was probable cause that the horses should be forfeited." Oral Argument at 3:56, 5:28, 6:03, 7:42. She also admitted during oral argument that the decision not to introduce evidence regarding the legality of the search was "a tactical issue that was addressed by the counsel that represented the appellant at that hearing." Oral Argument at 9:28. Despite this, she later suggested that suppression issues cannot be raised in civil proceedings in Oklahoma, which, she argued, explained why she had not raised the constitutional concerns during the forfeiture

proceeding. Oral Argument at 9:37, 12:55. Unfortunately, that was an incorrect understanding of the law, as explained above, and an error that we cannot correct on appeal. Campbell is not exempt from claim preclusion principles because her attorney at the forfeiture proceeding made a "tactical" choice or misunderstood the scope of the hearing.

We conclude that the trial court did not prevent Campbell from seeking to suppress evidence under the Fourth Amendment. But before applying claim preclusion to bar her claim, we must also determine whether allowing her to pursue those claims now would either nullify the state court forfeiture proceeding or impair the rights established in that case. Allowing Campbell to pursue her Fourth Amendment arguments in support of her § 1983 claim would not nullify the forfeiture judgment. "[W]hen a Fourth Amendment violation occurs during a search, evidence that is not obtained as a result of that violation is not necessarily suppressed." *Pearson v. Weischedel*, 349 F. App'x 343, 347 (10th Cir. 2009) (unpublished) (citing *New York v. Harris*, 495 U.S. 14 (1990) ("[A]s emphasized in earlier cases, we have declined to adopt a per se or but for rule that would make inadmissible any evidence, whether tangible or live-witness testimony, which somehow came to light through a chain of causation that began with an illegal arrest. Rather, in this context, we have stated that the penalties visited upon the Government, and in turn upon the public, because its officers have

violated the law must bear some relation to the purposes which the law is to serve." (internal citations and quotations omitted)).

Here, before seeking the search warrant, law enforcement officers saw first-hand from public view the emaciated condition of some of the 44 horses. Even suppressing evidence seized under the search warrant, the state court may still have found sufficient probable cause of neglect to forfeit the horses. Yet, the court could have also concluded otherwise, finding insufficient evidence to support probable cause. Either way, the later federal lawsuit would not necessarily nullify the previous state court proceeding.

But that does not end the matter because if we allow Campbell to pursue her Fourth Amendment claims in this lawsuit, we would impermissibly impair the Municipalities' rights established in the forfeiture proceeding. An unpublished Tenth Circuit case applying Oklahoma law describes how. In *Copeman v. Ballard*, the plaintiff filed a Fourth Amendment-based § 1983 lawsuit against state law enforcement officials, alleging that they had relied on false affidavits to obtain the warrants authorizing a seizure of property and then exceeded the scope and terms of the warrant while executing it. 214 F. App'x at 740. For relief, the plaintiff requested "either the release or return of all property seized in regards to the warrants issued . . . with reasonable compensation for any missing property

. . . or $2 million in compensatory relief." *Id.* In holding that the § 1983 claims were barred by Oklahoma claim preclusion law, we explained as follows:

> Allowing Plaintiff's § 1983 action to go forward would clearly undercut the state district court's judgment in the forfeiture proceedings. Defendant's argument that an award of money damages in lieu of the property's return would not in any way affect the state court's judgments rings hollow. . . . An award of compensatory damages based on the alleged value of the seized property, which is precisely what Plaintiff seeks if he cannot recover the property, would suggest the invalidity of the state court's forfeiture orders.

*Id.* at 742–43. Campbell's situation is nearly identical.

In her complaint, Campbell sought compensatory damages arising from the Fourth Amendment violations. At oral argument, Campbell clarified that for compensatory damages she is seeking the value of the forfeited horses. The court asked, "Are your damages for the Fourth Amendment violation that you're alleging, those are based on the value of the horses, is that right?" Campbell said, "Yes, yes." Oral Argument at 14:19. As was the case in *Copeman*, allowing her to seek recovery for the lost value of the horses "would suggest the invalidity of the state court's forfeiture orders." *See Copeman*, 214 F. App'x at 743. If Campbell were to succeed in recovering the value of her property, that would deprive the Municipalities of the property rights vested in them by the forfeiture proceeding. Thus, Oklahoma's law on claim preclusion bars her suit in this case.

We note that policy reasons support our conclusion: (1) judicial economy; and (2) the integrity of judgments. *See Plotner v. AT&T Corp.*, 224 F.3d 1161, 1168

(10th Cir. 2000) ("The fundamental policies underlying the doctrine of res judicata (or claim preclusion) are finality, judicial economy, preventing repetitive litigation and forum-shopping, and the interest in bringing litigation to an end." (internal quotations omitted)). These considerations apply with just as much force in forfeiture proceedings. In forfeiture proceedings, a court is tasked with assigning the legal rights for property seized by the government. Judicial economy encourages a rule that requires the parties to raise all claims, counterclaims, and defenses that relate to that property in the forfeiture proceeding. Further, the integrity of a forfeiture judgment is just as important as the integrity of judgments from other proceedings. Parties have a legitimate interest in knowing whether they have succeeded in their claim for legal title in the disputed property.

Because we hold that claim preclusion bars Campbell's claims, we need not reach whether they would be barred under principles of issue preclusion or whether Campbell has failed to state a claim for relief under § 1983.

IV.

Campbell's § 1983 claims are barred by the doctrine of claim preclusion because she could have contested the forfeiture of her horses on Fourth Amendment grounds during the state forfeiture hearing. To allow her to bring the

claims now would impair the rights established in that first proceeding. Accordingly, we affirm the district court's decisions to grant Spencer and Forest Park's motions to dismiss and to grant Blaze's motion for summary judgment.