506 P.2d 392 (1972)
Alan J. WAITKUS, Plaintiff-Appellant,
v.
William A. Cleveland POMEROY et al., Defendants-Appellees.
No. 71-321.
Colorado Court of Appeals, Div. I.
October 31, 1972.
Rehearing Denied December 12, 1972.
Certiorari Granted February 26, 1973.
*394 Martin, Knapple & Johnson, James G. Martin, Helen P. Garfield, Boulder, for plaintiff-appellant.
Yegge, Hall & Evans, Wesley H. Doan, Denver, for defendant-appellee, William A. Cleveland Pomeroy.
Selected for Official Publication.
SMITH, Judge.
While driving a sports car with Stephen Zeiler and Alan J. Waitkus as passengers, William A. Cleveland Pomeroy attempted to overtake an automobile being driven at a high speed by one Jan Kevin Vesey. Pomeroy lost control of his car which went into a broadside skid and smashed into a tree. Zeiler and Waitkus were both injured in the accident. Zeiler brought an action against Pomeroy, the driver of the car in which he had been riding, and against Vesey, the driver of the car Pomeroy was pursuing. Zeiler alleged that both Pomeroy's gross negligence and Vesey's negligence were the proximate cause of his injuries. At the conclusion of plaintiff's evidence, the trial court directed a verdict in Vesey's favor. The jury subsequently awarded Zeiler a $5000 judgment against Pomeroy. The result in that case was affirmed by this court. Pomeroy v. Zeiler, Colo.App., 473 P.2d 988.
Waitkus, the other passenger in the car driven by Pomeroy, initiated the present action against Pomeroy, Vesey, and Vesey's father, asserting the same basis for recovery as did Zeiler in his earlier action. Waitkus moved for summary judgment against Pomeroy on the issue of liability, asserting that the doctrine of res judicata prevented defendant Pomeroy from denying and thus relitigating that issue. The court granted plaintiff's motion for summary judgment.
Defendants Vesey thereafter moved for summary judgment on the basis that the same doctrine should prevent the plaintiff Waitkus from asserting against them the identical issues that had been determined in Vesey's favor in Pomeroy v. Zeiler, supra. Defendants Vesey argued that the theory upon which the court granted plaintiff a summary judgment on the issue of defendant Pomeroy's liability should apply with equal force to their motion for summary judgment. Accordingly, the court granted defendants Veseys' motion for summary judgment and dismissed them from the case. Trial to a jury, solely on the issue of damages, resulted in an award in favor of plaintiff and against defendant Pomeroy in the amount of $100,000.
Defendant Pomeroy filed a motion for new trial on the ground that the court erred in granting both motions for summary judgment. Defendant Pomeroy argued that the court erred in ruling that the result in the previous action, Pomeroy v. Zeiler, supra, could be asserted as collateral estoppel in the present case. Pomeroy also asserted, as additional grounds for new trial, that the trial court erred in failing to excuse a juror for cause and that the verdict was grossly excessive.
In its minute order, the court ruled as follows concerning the motion for new trial:
"Motion for new trial is now granted in its entirety. All parties are put back in the same position they were in at the beginning of the trial."
The trial judge then disqualified himself from the case, which was reassigned to another judge.
Plaintiff again moved the court for summary judgment against defendant Pomeroy on the issue of liability. The grounds for the motion were precisely the same as in plaintiff's previous motion for summary judgment. Similarly, defendants Vesey again moved for summary judgment against plaintiff Waitkus on the same grounds as they had previously. This time the court denied both motions and a second trial to a jury on all issues resulted in a verdict for the plaintiff and against the defendant Pomeroy and defendants Vesey jointly for damages in the amount of $33,000.34.
*395 Plaintiff thereafter moved the court for an order altering and amending the judgment entered on the second verdict. Plaintiff complained that the judgment entered after the second trial was in error and argued that the earlier verdict in the sum of $100,000 should be reinstated against defendant Pomeroy, and that judgment on the second verdict, in the amount of $33,000.34, should be entered against defendants Vesey only. The motion to amend or alter the judgment was denied, and from the judgment entered on the second verdict, plaintiff appeals. We reverse and remand.

I.
The determination of this appeal turns upon the applicability of res judicata asserted as collateral estoppel. Collateral estoppel may be applied when, in a subsequent action, an issue litigated and determined in an earlier case is asserted by or against a party in the second action who was a party, or in privity with, a party to the action. In Murphy v. Northern Colorado Grain Co., 30 Colo.App. 21, 488 P.2d 103, this court approved the use of res judicata as collateral estoppel and accepted the reasoning in Bernhard v. Bank of America National Trust & Savings Association, 19 Cal.2d 807, 122 P.2d 892. In Bernhard, Mr. Justice Traynor, confronting the question of the applicability of res judicata as a basis for applying the collateral estoppel doctrine, identified three tests as being determinative of the issue:
"[1] Was the issue decided in the prior adjudication identical with the one presented in the action in question? [2] Was there a final judgment on the merits? [3] Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?"
In a subsequent opinion, he recognized the necessity of a fourth test. Was the issue in the first case competently, fully, and fairly litigated? Teitelbaum Furs, Inc. v. Dominion Insurance Co., 58 Cal.2d 601, 25 Cal.Rptr. 559, 375 P.2d 439. In that case, inquiry was made into the facts surrounding the former judgment to determine the fairness of allowing collateral estoppel in the subsequent action.
We conclude that the burden is upon the party asserting res judicata as collateral estoppel to prove that these four tests are met, and the trial court must consider and rule upon these tests in determining the propriety of applying the doctrine.

II.
We first consider whether plaintiff was initially entitled to summary judgment against Pomeroy on the issue of liability. Plaintiff argues that the doctrine of collateral estoppel compels us to prevent the relitigation of defendants' liability in the present case. Defendant contends that the doctrine if applied here would not be asserted defensively, as in Murphy, supra, but offensively and thus should not be allowed.
"Defensive use" of collateral estoppel occurs when a stranger to a former judgment relies upon that judgment to release himself from the need to defend an issue which the opponent has had previously determined against him. "Offensive use" occurs when a stranger to a judgment relies upon a former judgment to which his opponent was a party to conclusively establish in his favor an issue which he otherwise would be required to prove as an element of his case. Defendant points out that the California courts are not agreed as to whether Bernhard, supra, which involved a defensive use of collateral estoppel, is precedent for allowing an offensive use of collateral estoppel. Compare Hardware Mutual Insurance Co. v. Valentine, 119 Cal.App.2d 125, 259 P.2d 70, with Nevarov v. Caldwell, 161 Cal.App.2d 762, 327 P.2d 111.
An examination of the cases has convinced us that there is little real distinction between offensive and defensive use of the doctrine of collateral estoppel. The courts which have addressed themselves to this point have seemed to indicate that when the doctrine is asserted defensively, *396 or as a shield, there is less likelihood of an unfair result being achieved than when the doctrine is asserted offensively, as a sword. Adamson v. Hill, 202 Kan. 482, 449 P.2d 536. Assuming that the tests set forth in Bernhard, supra, have been met, the decision to apply the doctrine, in the final analysis, must rest upon a determination by the trial court of the fairness of the judgment sought to be applied, and not upon the purpose for which it is asserted. See Currie, Civil Procedure: The Tempest Brews, 53 Cal.L.Rev. 25. The fairness test involves an inquiry concerning the opportunity of the party sought to be bound to fully and fairly litigate the issue in the previous case and of the fairness of the result in that proceeding. Compare Zdanok v. Glidden Co., 327 F.2d 944 (2d Cir.), cert. denied, 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298, with Berner v. British Commonwealth Pacific Airlines, Ltd., 346 F.2d 532 (2d Cir.), cert. denied, 382 U.S. 983, 86 S.Ct. 559, 15 L.Ed.2d 472. We conclude that creation of an arbitrary rule of application, based upon whether the doctrine is asserted offensively or defensively, would ignore the overriding consideration of the law for justice and fair play which gives rise to the doctrine of collateral estoppel in the first instance.
In the present case, the issue as between Pomeroy and his passenger decided in the prior adjudication, is identical with the one presented in the present action. There was a final judgment on the merits, affirmed by this court. Pomeroy, against whom the plea is asserted, was a party in the prior adjudication. Pomeroy has not complained of the fairness or fullness of opportunity to litigate in the previous proceedings, and, upon Waitkus' showing, the trial court found that there was no such deprivation or lack of fairness. Therefore, we determine that the trial court did not err in determining that the requisite tests had been met and in initially granting plaintiff's motion for summary judgment on the issue of liability against Pomeroy.

III.
In light of the fact that Vesey was exculpated in the same proceedings which we have allowed to be asserted against the defendant Pomeroy relative to his liability, it is necessary for us to consider the Veseys' liability in the instant case. This is true even though the defendants Vesey have not appeared in this appeal. If we were to allow the jury verdict in the second trial against defendants Vesey to stand, because of their failure to participate in this appeal, a situation would be created wherein defendants Vesey and Pomeroy would be jointly liable to the plaintiff and at the same time that liability would be measured by two disparate verdicts rendered by separate juries. Such a result is not acceptable.
Applying the four tests previously enunciated, we must determine whether the doctrine of collateral estoppel can be properly asserted to prevent plaintiff from requiring defendants Vesey to again defend on the issue of their liability. Except for the inclusion of Vesey's father in the present suit on the basis of the family purpose doctrine, the issues between Zeiler and the Veseys, decided in the prior adjudication, are identical with the ones in the present action. The question of liability of Vesey's father obviously does not arise as an issue in the instant case unless Vesey is found to be liable. As indicated above, the final decision in the previous case was affirmed by our court. There has been no indication by any party of any unfairness or lack of a full opportunity to litigate in the previous case, and the trial court initially found that there was none. However, Waitkus, the party against whom the doctrine is now asserted, was not a party in the previous action.
The risk here involved in the application of collateral estoppel is that Waitkus may be denied his "day in court" against the Veseys and that he may be thereby denied due process of law. It is stated as a fundamental principle of jurisprudence *397 that one is not bound by a judgment in personam rendered in a proceeding to which he has not been made a party. Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565. Hansberry v. Lee, 311 U.S. 32, 61 S. Ct. 115, 85 L.Ed. 22. Yet, as an analogy, it has been determined that rendition of judgment in a class action does not constitute a denial of due process to the members of the class who did not appear and litigate when the procedure was such that the persons who did appear and litigate on behalf of others similarly situated were of the same class as those absent and the litigation was conducted in such a manner as to insure the full and fair consideration of the common issue. Hansberry, supra.
Also, in situations similar to the one at hand, Louisiana Courts have recognized a concept which they call "judicial estoppel." California Co. v. Price, 234 La. 338, 99 So. 2d 743. Under this doctrine, the identity of parties requirement of res judicata has been relaxed. This concept has been utilized to prevent plaintiffs from relitigating an issue which has already been judicially determined even though the plaintiff was not a party or in privity with parties to the previous action. Cauefield v. Fidelity & Casualty Co., 378 F.2d 876 (5th Cir.). Where an injured passenger filed suit against all three drivers involved in an accident after a previous action, in which plaintiff was not a party, had determined that two of the drivers were not negligent, the Federal District Court of Louisiana concluded:
"In the instant case the negligence of every party was at issue in the state court proceedings. Those issues were finally adjudicated. Plaintiff is judicially estopped from a re-trial of those issues. It would be manifestly unjust to allow one, by re-arrangement and addition of parties, to have access to several forums in which to attempt to recover favorable judgments on the same cause of action." Friedenthal v. Williams, D.C., 271 F. Supp. 524.
It is, however, clear from these cases, as from Teitelbaum, supra, that a denial of due process will arise unless there has been a full and fair opportunity for litigation of the issue in the previous case. That matter, as we have previously said, must be considered by the court in which the doctrine is sought to be invoked.
It is well established in Colorado that the doctrine of res judicata may properly be asserted against one who is not a party to an action if he is "in privity" with one who was a party to the suit. Green v. Chaffee Ditch Co., 150 Colo. 91, 371 P.2d 775; Indemnity Insurance Co. v. Smith, 101 Colo. 61, 70 P.2d 343; James v. James, 85 Colo. 154, 274 P. 816; and Combs v. Farmers' High Line Canal & Reservoir Co., 38 Colo. 420, 88 P. 396. There is no denial of due process in these cases because of the closeness of the persons "in privity" and their common interests. These decisions actually turn on the identity of interest between the parties, the term "in privity" conceptually referring to the identical nature of the interest between the parties. See Hudson v. Western Oil Fields, Inc., 150 Colo. 456, 374 P.2d 403; Bruszewski v. United States, 181 F.2d 419 (3rd Cir.), cert. denied, Bruszewski v. United States War Shipping Administration, 340 U.S. 865, 71 S.Ct. 87, 95 L.Ed. 632; Comment, Nonparties and Preclusion by Judgment: The Privity Rule Reconsidered, 56 Cal.L.Rev. 1098 at 1102.
In the present case, a careful examination of the facts discloses that the interest of the previous plaintiff, Zeiler, and the present plaintiff, Waitkus, are identical as far as the liability of Vesey is concerned. Both Zeiler and Waitkus were passengers in the automobile driven by Pomeroy. Defendants Veseys' liability, if any, to either passenger in the car is exactly the same even though the amount of damages differed. Except for the additional assertion of the family purpose doctrine in the present case, the pleadings in both cases assert the same claims and defenses.
*398 The application of the doctrine of res judicata rests "upon the sound public policy of limiting litigation by preventing a party who has had one fair trial on an issue from again drawing it into controversy.. . . The doctrine also serves to protect persons from being twice vexed for the same cause." Bernhard, supra.
In giving purpose and meaning to this rationale, we hold the doctrine of collateral estoppel, as we have described it above, is applicable in a situation where, although the parties were not identical, their interests were identical. We conclude that the trial court did not err in determining that the tests enunciated in Bernhard and Teitelbaum, supra, had been met in initially granting summary judgment to defendants Vesey.

IV.
We have determined that the trial court did not err in initially granting the motions for summary judgment. Defendant Pomeroy moved for a new trial on the basis that the trial court erred not only in allowing the doctrine of collateral estoppel to preclude the issue of defendant Pomeroy's liability, but also in failing to dismiss a juror for cause. The motion for new trial also asserted that the verdict was grossly excessive. The trial court's minute order granting a new trial did not delineate the specific grounds upon which the new trial was granted.
If the trial court granted defendant Pomeroy's motion for new trial solely on the basis that it had erred in its application of the law in granting the summary judgment motions, then the first verdict should be reinstated. The only matter to be retried because of other errors would be the damage claim of Waitkus against Pomeroy. Since it is possible that the trial court may have granted the new trial on the other grounds asserted, it is necessary to remand the case to the initial trial judge for that determination.
We reverse and remand for further proceedings not inconsistent herewith.
COYTE, J., concurs.
SILVERSTEIN, C. J., dissents.
SILVERSTEIN, Chief Judge (dissenting).
I disagree with the majority and would affirm the judgment of the trial court.
The majority, in its opinion, extends the application of the doctrine of collateral estoppel to the point where it deprives the plaintiff of procedural due process and his day in court. The rationale of res judicata (and collateral estoppel) is, as stated in the majority opinion, to prevent "a party who has had one fair trial on an issue from again drawing it into controversy," and "to protect persons from being twice vexed for the same cause."
Although the policy of limiting litigation is sound, it should not be applied to deprive a party of procedural due process. Collateral estoppel can properly be applied to prevent a party who has had one fair trial on an issue from bringing another action to re-litigate that issue against one who was not a party to the first action. This was the situation in the cases cited by the majority, Murphy v. Northern Colorado Grain Co., 30 Colo.App. 21, 488 P.2d 103, and Bernhard v. Bank of America National Trust & Savings Assn., 19 Cal.2d 807, 122 P.2d 892, and in Brennan v. Grover, 158 Colo. 66, 404 P.2d 544. When, as here, application of the doctrine deprives one who was not a party to the first action of the right to assert a claim in the second action then collateral estoppel should not be applied for the following reasons.
First, the Colorado Rules of Civil Procedure provide many methods for avoiding multiplicity of law suits, and second, the tests outlined in the majority opinion to determine when the doctrine should apply lead only to uncertainty and confusion which could hamper the course of litigation.
The following procedural rules are all designed to avoid multiplicity of actions in various situations where collateral estoppel might be sought: C.R.C.P. 19 and 20 *399 (joinder of parties); C.R.C.P. 22 (interpleader); C.R.C.P. 23 (class actions); C. R.C.P. 24 (intervention); C.R.C.P. 14 (third-party practice); and C.R.C.P. 42 (consolidation of actions).
The test enunciated by the majority which requires the court in the second action to determine that the first case was "completely, fully and fairly litigated" requires a collateral review of the first judgment, especially where there has been no appeal. Presumably this would require a review of the entire record of the first case, and a determination by the second judge of the correctness of every ruling of the first judge, the adequacy of counsel, and the correctness of the judgment. Such a review could not reveal many of the factors which affected the outcome of the first case or the reasons why no appeal was taken, such as settlement negotiations before and after judgment, the non-availability of key witnesses, and the possible inadequacy of preparation due either to lack of time, lack of finances, lack of substantial damages, or lack of dispute on all issues.
In the light of these two grounds of disagreement with the majority, it is my opinion that if collateral estoppel is to be applied, it should be applied against the party who is responsible for the multiplicity of actions and in favor of the party who has attempted, through the use of existing procedures, to avoid such multiple actions. In this case, since the record does not disclose that Pomeroy, or Waitkus, or the Veseys took any action to avoid the necessity of this second litigation, in my view none of them are entitled to invoke the doctrine of collateral estoppel. For a discussion of this approach, see Semmel, Collateral Estoppel, Mutuality and Joinder of Parties, 68 Colum.L.Rev. 1457.
I agree with the majority that, if collateral estoppel is to be applied, it must be applied to dismiss the Veseys from the case as well as to determine liability on the part of Pomeroy. I do not agree, however, that collateral estoppel should be applied in the present action.