**Robert STONE, Plaintiff,**

v.

**DEPARTMENT OF AVIATION, Denver International Airport and the City and County of Denver, a Municipal Corporation, Defendants.**

**No. CIV.A. 02N1736.**

United States District Court, D. Colorado.

Dec. 19, 2003.

---

David Lichtenstein, Esq., Denver, CO, for Plaintiff.

Jack M. Wesoky, Mindi Lynn Wright, City Attorney's Office, Denver, CO, for Defendants.

## ORDER AND MEMORANDUM OF DECISION

NOTTINGHAM, District Judge.

This is an Americans with Disabilities Act ("ADA") case. Plaintiff Robert Stone alleges that Defendants Department of Aviation, Denver International Airport, and the City and County of Denver, a Municipal Corporation (collectively "defendants") violated the ADA by terminating his employment. This matter is before the court on "Plaintiff's Motion for Partial Summary Judgment," filed May 12, 2003, and "Defendants' Motion for Summary Judgment," filed May 12, 2003. Jurisdiction is based on 28 U.S.C.A. § 1331 (West 1993 & Supp.2003).

## FACTS

I will only briefly address the substantive facts of this case since these motions can be decided on procedural grounds. Defendants employed plaintiff from September 1995 to January 2001. (Br. in Supp. of Pl.'s Mot. for Partial Summ. J., Statement of Undisputed Facts ¶¶ 2, 14 [filed May 12, 2003] [hereinafter "Pl.'s Br."]; *admitted at* Resp. to Pl.'s Mot. for Partial Summ. J., Resp. to Undisputed Facts ¶¶ 2, 14 [filed June 3, 2003] [hereinafter "Defs.' Resp."].) According to plaintiff, defendants terminated plaintiff's employment, as well as refused to transfer him within defendants' organization, in violation of the ADA. (Compl. and Jury Demand [filed Sept. 10, 2002] [hereinafter "Compl."].)

On January 19, 2001, plaintiff filed an appeal with the career service board of the City and County of Denver over defendants' decision to terminate his employment. (Pl.'s Br., Statement of Undisputed Facts ¶ 15; *admitted at* Defs.' Resp., Resp. to Undisputed Facts ¶ 15.) A hearing officer held a hearing on this appeal on March 26, 2001. (*Id.*) The hearing officer determined that defendants' actions qualified plaintiff as a member of the class of individuals protected under the ADA and corresponding Denver Career Service Rule ("CSR") 9–62, which governs the treatment and transfer of disabled City and County of Denver employees. (*Id.,* Statement of Undisputed Facts ¶ 25; *admitted at* Defs.' Resp., Resp. to Undisputed Facts ¶ 25.) The hearing officer then decided that (1) defendants failed to apply these regulations to plaintiff appropriately; (2) plaintiff demonstrated a prima facie case of disability discrimination by defendants in violation of CSR Rule 19–10—that pro-

hibits discriminatory actions because of disability—when defendants' agent refused to accept a transfer of plaintiff between defendants' departments; (3) defendants failed to demonstrate a legitimate business reason for its agent's refusal to hire plaintiff in the agent's department; and (4) defendants' justification for its failure to transfer plaintiff was a pretext for discrimination. (*Id.*) In her decision, the hearing officer discusses, or cites to, the ADA more than a dozen times. (*Id.,* Ex. 2 [Hearing Officer's Findings and Order].) Based on the foregoing analysis, the hearing officer sided with the plaintiff and reversed defendants' decision to terminate plaintiff. (*Id.*) On June 28, 2001, the career services board affirmed the hearing officer's decision. (Defs.' Br. in Supp. of Mot. for Summ. J., Statement of Undisputed Facts ¶ 72 [filed May 12, 2003] [hereinafter "Defs.' Br."]; *admitted at* Pl.'s Resp. to Defs.' Mot. for Summ. J., Resp. to Undisputed Facts ¶ 72 [filed June 2, 2003] [hereinafter "Pl.'s Resp"].)

Subsequently, on July 27, 2001, defendants appealed this decision to Denver District Court ("state district court") pursuant to Colo. R. Civ. P. 106(a)(4). (Defs.' Br., Statement of Undisputed Facts ¶ 73; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 73.)[1] The parties in this state district court case were defendants, on one hand, and the career service board, Joanna L. Kay, in her capacity as a hearings officer for the career service board, and plaintiff, on the other hand. (Pl.'s Br. at Ex. 4 [Colo. Dist. Ct. Order].) Plaintiff was served in the state district court action on August 8, 2001. (Pl.'s Resp. at 14.) On August 27, 2001, plaintiff filed a charge of discrimination against defendants with the Equal Employment Opportunity Commis-

---

1. Thus, defendants were the plaintiffs in the state district court action, and plaintiff was one of the defendants in that action. I will refer to the parties in their respective capaci- ties in this case, not the state district court case, even when referring to the state district court case.

sion ("EEOC"), alleging that defendants violated the ADA. (Defs.' Br., Statement of Undisputed Facts ¶ 74; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 74.) Plaintiff filed his answer in the state district court action on September 17, 2001. (Pl.'s Resp., Statement of Additional Undisputed Facts ¶ 11; *admitted at* Defs.' Reply in Supp. of Mot. for Summ. J., Resp. to Statement of Additional Facts ¶ 11 [filed June 24, 2003].) Plaintiff did not file an ADA counterclaim against defendants in the state district court proceedings. (Defs.' Br. at 23; Pl.'s Resp. at 13–14.) On June 12, 2002, the EEOC issued a "Dismissal and Notice of Right to Sue" letter to plaintiff. (*Id.,* Statement of Undisputed Facts ¶ 75; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 75.) On September 10, 2002, plaintiff filed the current action in this court alleging that defendants violated the ADA by failing to transfer him and terminating his employment. (Compl.) On February 27, 2003, the state district court affirmed the hearing officer's decision. (Defs.' Br., Statement of Undisputed Facts ¶ 77; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 77.) On April 14, 2003, defendants appealed this decision to the Colorado Court of Appeals. (*Id.,* Statement of Undisputed Facts ¶ 78; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 78.)

On May 12, 2003, plaintiff filed a motion for partial summary judgment in this action, arguing that he is entitled to a judgment as a matter of law that defendants violated the ADA under the doctrines of res judicata and collateral estoppel, due to the career service board and state district court decisions. (Pl.'s Mot. for Partial Summ. J. [filed May 12, 2003].) On the same day, defendants filed a motion for summary judgment. (Defs.' Mot. for Summ. J. [filed May 12, 2003].) Defendants argue that (1) they did not violate the ADA, and (2) the court must dismiss the action for lack of subject matter juris-diction under the doctrine of res judicata and collateral estoppel, due to plaintiff's failure to bring an ADA counterclaim against defendants in the state district court action. (Defs.' Br. at 12–24.)

## ANALYSIS

### 1. Standard of Review

Pursuant to rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c) (2003); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Concrete Works of Colorado, Inc. v. City & County of Denver,* 36 F.3d 1513, 1517 (10th Cir.1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc.,* 36 F.3d at 1518 (citing *Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. at 2554). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. at 2553; *see* Fed.R.Civ.P. 56(e). " 'Only disputes over facts that might affect the outcome of the suit under governing law will preclude the entry of summary judgment.' " *Sanchez v. Denver Pub. Schs.,* 164 F.3d 527, 531 (10th Cir.1998) (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2505). The court may consider

only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La–Z–Boy Chair Co.,* 756 F.2d 1467, 1474 (10th Cir.1985). The factual record must be viewed in the light most favorable to the nonmoving party. *Concrete Works, Inc.,* 36 F.3d at 1518 (citing *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 [10th Cir.1990]).

### 2. Res Judicata and Claim Preclusion

Courts, as well as parties, often confuse res judicata with collateral estoppel. *See, e.g., Int'l Air Response v. U.S.,* 324 F.3d 1376, 1378 (Fed.Cir.2003) (noting on rehearing that previous decision confused the terms of res judicata and collateral estoppel); *Waitkus v. Pomeroy,* 31 Colo. App. 396, 506 P.2d 392, 395–96 (1972), *rev'd* 183 Colo. 344, 517 P.2d 396 (1973) (confusing the terms of res judicata and collateral estoppel as noted in the opinion reversing the decision); 18 James Wm. Moore et al., Moore's Federal Practice § 132.01[4][b] (3d ed.1999) ("[o]n all too many occasions, the courts have confused one doctrine [res judicata] with the other [collateral estoppel]"). Such confusion often stems from the fact that the term "res judicata ... is sometimes sweepingly used" to cover both the doctrine of res judicata (claim preclusion) as well as the doctrine of collateral estoppel (issue preclusion). 18 James Wm. Moore et al., Moore's Federal Practice § 132.01[4][b] (3d ed.1999). Res judicata, as the term is used today, is a distinct concept that differs from collateral estoppel. *Pomeroy,* 517 P.2d at 399.

█ Res judicata bars a second action when the same parties have already litigated the claim to a final judgment in the first proceeding, and it bars not only issues decided in the first proceeding but also issues that should have been, but were not, raised in the first proceeding.

*City and County of Denver v. Block 173 Assocs.,* 814 P.2d 824, 830 (Colo.1991). Collateral estoppel, on the other hand, provides that once a court has decided an issue of fact or law necessary to its judgment, that decision precludes relitigation of the issue in a suit on a different cause of action involving the same parties. *Id.* at 831. Thus, "[c]ollateral estoppel is broader than *res judicata* since it applies to claims for relief different from those litigated in the first action, but narrower in that it only applies to issues actually litigated." *Id.* at 831.

### 3. Application of Res Judicata

Plaintiff sets forth two arguments why he believes he is entitled to partial summary judgment. First, according to plaintiff, the doctrine of res judicata applies to this case and establishes defendants' liability. (Pl.'s Br. at 8–11.) Second, according to plaintiff, the doctrine of collateral estoppel applies to this case and establishes defendants' liability. (Pl.'s Br. at 12.) Defendants, on the other hand, argue that the doctrine of res judicata bars plaintiff's claim in this court due to plaintiff's failure to bring an ADA counterclaim against defendants in the state district court action. (Defs.' Br. at 12–24.) Defendants also argue that they did not violate the ADA as a matter of law. (Defs.' Br. at 13–17.) Because I resolve this case on the res judicata issue, I do not address plaintiff's collateral estoppel argument or defendants' ADA argument.

█ In determining the preclusive effect of a state district court judgment, federal courts must follow the rules chosen by the state from which judgment is taken. *Matsushita Elec. Indus. Co., Ltd. v. Epstein,* 516 U.S. 367, 373, 116 S.Ct. 873, 877, 134 L.Ed.2d 6 (1996); *Fox v. Maulding,* 112 F.3d 453, 456 (10th Cir.1997). "*Res judicata* operates as a bar to a second

action on the same claim as one litigated in a prior proceeding when there is [1] a final judgment, [and] identity of [2] subject matter, [3] claims for relief, and [4] parties to the action." *City and County of Denver,* 814 P.2d at 830 (citations omitted). Moreover, *"[r]es judicata* not only bars issues actually decided, but also any issues that should have been raised in the first proceeding but were not." *Id.* (citation omitted). I will examine these factors, in turn, after addressing whether res judicata can be applied offensively, as plaintiff suggests.

### a. Offensive Use of Res Judicata

Plaintiff argues that the issue before this court was already decided by the career service board and/or the state district court, and that under the doctrine of res judicata, this determination should be used offensively in the present case to resolve defendants' liability. (Pl.'s Br. at 8–11.) Plaintiff's argument is misplaced. As stated above, res judicata acts "as a bar" to a second action. *City and County of Denver,* 814 P.2d at 830; *see also Cruz v. Benine,* 984 P.2d 1173, 1176 (Colo.1999) (res judicata "operates as a bar to a second action"); *Farmers High Line Canal and Reservoir Co. v. City of Golden,* 975 P.2d 189, 199 (Colo.1999) (same); *S.O.V. v. People in Interest of M.C.,* 914 P.2d 355, 358 (Colo.1996) (same). Certainly, plaintiff doesn't intend to bar this action, yet if plaintiff is correct that res judicata applies to this case, this case must be dismissed.

Plaintiff argues, however, that res judicata can be applied offensively, as well as defensively, and thus defendants are liable in the present case. (Pl.'s Br. at 8–11.) Plaintiff cites *Waitkus v. Pomeroy,* for the proposition that res judicata can be applied offensively as well as defensively. *Waitkus,* 506 P.2d at 395–96. Plaintiff's cita-

tion is misplaced because *Waitkus* uses the term res judicata to mean "collateral estoppel," as opposed to using res judicata in its ordinary meaning, as a synonym for claim preclusion. *Id.* at 395 ("The determination of this appeal turns upon the applicability of res judicata asserted as *collateral estoppel."*) (emphasis added).[2] When the Colorado Supreme Court reversed the opinion cited by plaintiff, the court clarified the difference between res judicata and collateral estoppel and the Court of Appeals' misapplication of these terms. *Pomeroy,* 517 P.2d at 399.

As a general rule, courts will not apply the doctrine of res judicata offensively. *St. Paul Mercury Ins. Co. v. Williamson,* 224 F.3d 425, 439 (5th Cir.2000) ("[r]es judicata [ ] is typically a defensive doctrine"). This rule makes sense because, as discussed above, res judicata is used to "bar" the second action. *Cruz,* 984 P.2d at 1176; *Farmers High Line,* 975 P.2d at 199; *S.O.V.,* 914 P.2d at 358; *City and County of Denver,* 814 P.2d at 830. In very limited circumstances, however, courts have applied the doctrine of res judicata offensively. *See Bedgood v. Cleland,* 554 F.Supp. 513, 518 (D.Minn.1982) (permitting plaintiffs who were part of a national class action to file a separate action in their home state requesting enforcement of the ruling in the national class action under the principal of res judicata, as opposed to forcing them to travel to the state where the national class action proceedings occurred). Nevertheless, in such cases, "under the principle of res judicata[, plaintiffs] are entitled only to the relief obtained in [the previous action] and are precluded from receiving additional or differing relief." *Id.* at 518. Consequently, even if I were to apply res judicata offensively, as in *Bedgood,* plaintiff would

---

**2.** Collateral estoppel, unlike res judicata, can be used offensively. *See, e.g., Antelope Co. v.*

*Mobil Rocky Mountain, Inc.,* 51 P.3d 995, 1003 (Colo.App.2001).

be entitled to no relief in the present case because he is "precluded from receiving additional or differing relief" from the state district court proceedings. *Id.* For the foregoing reasons, res judicata, unlike collateral estoppel, acts as a bar to the second proceeding so it may not be used offensively, as plaintiff suggests.

### b. Res Judicata Factors

As stated above, res judicata "operates as a bar to a second action on the same claim as one litigated in a prior proceeding when there is [1] a final judgment, [and] identity of [2] subject matter, [3] claims for relief, and [4] parties to the action." *City and County of Denver,* 814 P.2d at 830 (citations omitted). As explained in greater detail below, the prior proceeding that may have a res judicata impact on this proceeding is the decision of the state district court, not the career service board, because plaintiff's alleged failure was not filing an ADA counterclaim in the state district court proceeding. I address each factor in the res judicata test, in turn, and then address whether plaintiff should have raised the issues before this court in front of the state district court.

### 1. Final Judgment

The first factor requires that there was a final judgment in the first proceeding. *City and County of Denver,* 814 P.2d at 830. Plaintiff argues that there has been a final judgment in the state district court case. (Pl.'s Br. at 10; Pl.'s Reply in Supp. of Mot. for Partial Summ. J. at 2–4 [filed June 18, 2003].) Defendants, on the other hand, argue that there has not been a final judgment in the state district court case. (Defs.' Resp. at 5–6.) Ironically, both par-

ties are arguing directly against their own interest on this issue. If there was no final judgment, as defendants contend, then res judicata will not bar the claim and defendants will remain in this lawsuit. If there was a final judgment, as plaintiff contends, then plaintiff has demonstrated one of the factors that would result in its case being dismissed.[3]

The crux of defendants' argument is that because it appealed the state district court decision, and the appeals court must review the state district court's decision de novo, there has not been a final judgment. (Defs.' Resp. at 5–6.) This argument is premised upon the fact that the state district court action is a Colo. Rule of Civ. Proc. 106(a)(4) action, and the appeals court reviews such actions on a de novo basis. (*Id.* at 6.)

As a general rule, a pending appeal does not preclude the application of res judicata to a trial court's judgment. *See Miller v. Lunnon,* 703 P.2d 640, 643 (Colo.App. 1985); Restatement (Second) of Judgments § 13 cmt. f (1982); *cf. Jefferson County Sch. Dist. No. R–1 v. Indus. Comm'n,* 698 P.2d 1350, 1353 (Colo.App. 1984) (applying this rule regarding collateral estoppel to an administrative hearing), *implicitly overruled on other grounds as stated in City of Colo. Springs v. Indus. Comm'n of State of Colo.,* 749 P.2d 412, 416 n. 4 (Colo.1988). The *Miller* case provides an exception to this rule when the appellate court reviews the judgement de novo. *Miller,* 703 P.2d at 643. At first glance, the case seems unclear whether this exception applies to (1) any de novo review by the appellate court, or (2) only to a trial de novo by the appellate court.

---

**3.** Plaintiff also argues that collateral estoppel applies. The final judgment requirement of res judicata is also a requirement of collateral estoppel. *City and County of Denver,* 814 P.2d at 830–31. Plaintiff's argument regard-

ing final judgment, therefore, while against his own interest regarding his res judicata argument, is not against his own interest regarding his collateral estoppel argument.

The *Miller* court stated that, "for the purposes of *res judicata*, the pending appeal did not suspend the operation of the otherwise final Jefferson County action, which ... was not subject to *de novo* review." *Id.* The Restatement (Second) of Judgments, cited in *Miller*, however, more explicitly explains that " 'a judgment otherwise final remains so despite the taking of an appeal unless what is called an appeal actually consists of a *trial de novo.*' " *Id.* (emphasis added; quoting Restatement (Second) of Judgments § 13 cmt. f [1982] ). Based upon the foregoing, the authority cited by *Miller* suggests that *Miller*'s exception only applies to a trial de novo.

Like *Miller,* the *Jefferson County* decision, cited by *Miller,* does not contain the "trial de novo" language. The *Jefferson County* court's language that the exception applies when the appeal "removes the entire case to the appellate court for *de novo* consideration," while unclear, suggests that *Jefferson County* meant a trial de novo, as opposed to a de novo review. *Jefferson County,* 698 P.2d at 1353. Moreover, the rule stated by the numerous authorities cited by the court in *Jefferson County,* which *Jefferson County* adopts, is for an exception only in the case of a trial de novo. *Id.* at 1352–53. Only two of the authorities cited by *Jefferson County* for its rule discuss the concept of an appellate "de novo" review, and both support the proposition that such a review must be a "trial de novo" for the exception to apply. *Kurek v. Pleasure Driveway and Park Dist. of Peoria, Ill.,* 557 F.2d 580, 595 (7th Cir.1977) ("the federal rule is that the pendency of an appeal does not suspend the operation of an otherwise final judgment as ... collateral estoppel, unless *the appeal removes the entire case to the appellate court* and constitutes a *proceeding de novo*") (emphasis added), *vacated and remanded on other grounds by* 435 U.S. 992, 98 S.Ct. 1642, 56 L.Ed.2d 81 (1978);

Restatement (Second) of Judgments § 13 cmt. f (quoted above).

Although the res judicata issue of de novo review was merely dicta in the *Miller* and *Jefferson County* cases, case law beyond Colorado demonstrates that courts generally accepted that a judgment is final for res judicata and collateral estoppel purposes despite the pendency of an appeal unless the appeal consists of a "trial de novo." *See, e.g., Nixon v. Richey,* 513 F.2d 430, 438 n. 75 (D.C.Cir.1975) ("The federal rule is that pendency of an appeal does not suspend the operation of a final judgment for purposes of collateral estoppel, except where appellate review constitutes a trial de novo, [and t]he majority of the states follow the same rule") (citations omitted); *Simpson v. City of Pickens, Miss.,* 887 F.Supp. 126, 129 (S.D.Miss. 1995) (following Mississippi law which follows the Restatement (Second) of Judgments, § 13 cmt. f, that has an exception in the case of a "trial de novo"); *TCA Bldg. Co. v. Northwestern Resources Co.,* 861 F.Supp. 1366, 1374 (S.D.Tex.1994) (explaining that both federal and Texas law have an exception in the case "where appeal consists of a trial de novo"); *Barnes v. Oody,* 514 F.Supp. 23, 25 (E.D.Tenn. 1981) ("A judgment will operate as an estoppel unless the proceeding on review is a trial de novo"); *In re Hohenberg,* 191 B.R. 694, 703 (Bkrtcy.W.D.Tenn.1996) ("the 'pendency of an appeal does not suspend the operation of an otherwise final judgment as *res judicata* or *collateral estoppel* unless the appeal removes the entire case to the appellate court and constitutes a proceeding *de novo* ' ") (quoting Moore's Federal Practice, ¶ 0.416[3.–2] [2d ed.] ); *In re Transworld Foods, Inc.,* 41 B.R. 363, 365 (Bkrtcy.Fla.1984) ("the rule in Florida is that the fact that an appeal is taken bars the *res judicata* effect of a prior judgment only if the appellate body is to conduct a *de novo* fact-finding proce-

dure and not where review is on the record"); *John Cheeseman Trucking, Inc. v. Pinson*, 313 Ark. 632, 855 S.W.2d 941, 943 (1993) ("a judgment is final for purposes of issue preclusion, despite a pending appeal for a review of the judgment, unless the appeal actually consists of a trial *de novo*"); 18 James Wm. Moore et al., Moore's Federal Practice § 131.30[2][c] (3d ed. 1999) ("An exception to the rule that a pending appeal does not inhibit the claim preclusive effect of a judgment occurs on the rare occasions when an appeal constitutes a proceeding de novo"); 18A Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, Federal Practice & Procedure § 4433 (2d ed. 1981 & Supp. 2003) ("a final judgment retains all of its res judicata consequences pending decision of the appeal, apart from the virtually nonexistent situation in which the 'appeal' actually involves a full trial de novo"); 46 Am.Jur.2d *Judgments* § 496 ("The pendency of an appeal does not alter the preclusive effect of a judgment or order, whether the judgment or order is rendered by a trial court or an administrative agency, unless what is called an appeal actually consists of a trial de novo"). Further, the policy for this exception only applying to appellate trials de novo is also sound. If the exception applied to all de novo appellate reviews, as defendants contend, the exception would swallow the rule because litigants who lost at trial could almost always challenge the legal conclusions of the trial court, thus having the case tied up in appellate "de novo" review, and preventing the application of res judicata.

■ For the foregoing reasons, I conclude that if faced with this issue, Colorado courts would decide that a judgment that is final for the purposes of res judicata remains so despite the pendency of an appeal, unless the appeal consists of a trial de novo.

■ Applying this rule to the present case, the state district court's jurisdiction was premised upon Colo. R. Civ. P. 106(a)(4), which provides, in pertinent part, that

> [R]elief may be obtained in the district court by appropriate action under the practice prescribed in the Colorado Rules of Civil Procedure ... [w]here any governmental body or officer or any lower judicial body exercising judicial or quasi-judicial functions has exceeded its jurisdiction or abused its discretion, and there is no plain, speedy and adequate remedy otherwise provided by law. [ ] Review shall be limited to a determination of whether the body or officer has exceeded its jurisdiction or abused its discretion, based on the evidence in the record before the defendant body or officer.

(2003). This review by a Colorado district court is reviewed by the Colorado Court of Appeals on a "de novo" basis because "the district court exercises no fact finding authority in such cases." *Feldewerth v. Joint Sch. Dist. 28–J of Counties of Adams and Arapahoe ex rel. Hartenbach*, 3 P.3d 467, 470 (Colo.App.1999). Such a review is equivalent to the "de novo" review applied by appellate courts in the summary judgment context. *See, e.g., Scott Sys., Inc. v. Scott*, 996 P.2d 775, 778 (Colo.App.2000) ("because a court rendering summary judgment does not engage in fact finding, our review of the court's ruling is *de novo*"). This is far different from a "trial de novo" at the appellate level. A trial de novo occurs where the appellate court has "the power to look beneath and beyond the record" of the court or administrative body below. *Am. Heritage Life Ins. Co. v. Heritage Life Ins. Co.*, 494 F.2d 3, 10 (5th Cir.) (regarding district court's trial de novo of an appeal from the Trademark Trial and Appeal Board). Since the appeal does not consist

of a trial de novo, the state district court's decision was a final judgment.

## 2. *Identity of Subject Matter and Claims for Relief*

The second and third factors require that there is an identity of subject matter and claims for relief. *City and County of Denver,* 814 P.2d at 830. The parties agree that both of these factors are met. (Pl.'s Br. at 9–10; Defs.' Br. at 19–20.) "Under the same claim for relief or same cause of action test, a court must look to the injury for which relief is demanded, not the legal theory on which the person asserting the claim relies." *Dalal v. Alliant Techsystems, Inc.,* 934 P.2d 830, 833 (Colo.App.1996) (citations omitted). Here, the alleged injury is identical: plaintiff's termination because of his disability. Similarly, the subject matter of the two actions, plaintiff's termination because of his alleged disability, is identical.

■■■ This conclusion is bolstered by the general rule that " 'all claims arising from the same employment relationship constitute the same transaction or series of transactions for claim preclusion purposes.' " *Wilkes v. Wyo. Dep't of Employment Div. of Labor Standards,* 314 F.3d 501, 504 (10th Cir.2002) (quoting *Mitchell v. City of Moore,* 218 F.3d 1190, 1202 [10th Cir.2000] ). The Colorado Court of Appeals has applied the same reasoning, explaining that "where the claims made in [first proceeding] arise out of the same incident, *i.e.,* termination. of the employment relationship, the principles of *res judicata* apply and the judgment in the [first proceeding] precludes later litigation of the same issues that were or could have been brought." *Vincent v. Clean Water Action Project,* 939 P.2d 469, 473 (Colo.App.1997). The parties agree that the claim before the career review board and the state district court arose out of the same transaction and incident as the claim before this court. (Pl.'s Br. at 9–11; Defs.' Br. at 19–20.) In light of the foregoing, I agree with the litigants that the these two factors are met, and that the claim before this court arose out of the same transaction and incident as the claim before the career review board and the state district court.

## 3. *Identity of the Parties to the Action*

The fourth factor require that there is an identity of the parties to the Action. *City and County of Denver,* 814 P.2d at 830. Plaintiff and defendants agree that there was an identity of the parties in the state district court case as there are in the present case. (Pl.'s Br. at 10–11; Defs.' Br. at 22.) I agree with the litigants in this case that there is identity of the parties because the state district court case was between defendants, on one hand; and the career service board, Joanna L. Kay, in her capacity as a hearings officer for the career service board, and plaintiff, on the other hand. (Pl.'s Br. at Ex. 4 [Colo. Dist. Ct. Order].)

## 4. *Plaintiff's Duty to Bring a Compulsory Counterclaim*

■■■ Generally, "a resolution on the merits of one claim for relief would operate to bar any other claims for relief that could have been brought in the first proceeding." *City and County of Denver,* 814 P.2d at 831. Where a claim should have been brought as a compulsory counterclaim in the first proceeding, such a claim is barred in the second proceeding. *Fox,* 112 F.3d at 457 (holding, in applying Oklahoma law where Oklahoma has a compulsory counterclaim rule identical to the federal rule, that " '[f]ailure to plead a compulsory counterclaim prevents a party from bringing a later independent action on that claim' ") (quoting *Okla. Gas & Elec. Co. v. Dist. Ct., Fifteenth Judicial Dist.,* 784 P.2d 61, 64 [Okla. 1989] ); *In re*

*Estate of Krotiuk,* 12 P.3d 302, 304 (Colo. App.2000) ("The failure to plead a claim properly classified as a compulsory counterclaim bars any later action on the claim"); Restatement (Second) of Judgments § 22(2)(a) (1982) ("A defendant who may interpose a claim as a counterclaim in an action but fails to do so is precluded, after the rendition of judgment in that action, from maintaining an action on the claim if: [t]he counterclaim is required to be interposed by a compulsory counterclaim statute or rule of court"); *cf. Eason v. Bd. of County Comm'rs of County of Boulder,* 961 P.2d 537, 539–40 (Colo. App.1997) (explaining by negative implication that if a compulsory counterclaim is required, res judicata bars a subsequent suit).

Colorado's compulsory counterclaim rule states, in pertinent part, that "[a] pleading shall state as a counterclaim any claim which at the time of filing the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Colo. R. Civ. P. 13(a) (2003). This language is the same as the language of the federal rule. *See* Fed. R.Civ.P. 13(a) (2003). Plaintiff's present suit, thus, will be barred if (1) at the time of the filing of his answer in state district court plaintiff could have raised his ADA claim, and (2) the ADA claim arose out of the same transaction or occurrence that is the subject matter of defendants' state district court claim.[4] I address each issue, in turn.

### a. Plaintiff's Ability to File an ADA Counterclaim

▌ Plaintiff argues that he could not have instituted a compulsory counterclaim against defendants in the state district court action because he was served in the state district court action "on August 8, 2001, at which time he had not yet even filed a charge of discrimination with the EEOC [Equal Employment Opportunity Commission]. His Answer was filed on September 17, 2001. He did not receive his right-to-sue notice[5] from the EEOC until June 12, 2002." (Pl.'s Resp. at 14 [footnote added].)

The Tenth Circuit has addressed and rejected this argument. *Wilkes,* 314 F.3d 501. In *Wilkes,* the plaintiff ("employee") filed a charge against her former employer with the EEOC. *Wilkes,* 314 F.3d at 502–503. Shortly thereafter, she filed a complaint in federal court in Wyoming against her employer for violation of the Equal Pay Act and retaliation by the employer in violation of her free speech rights. *Id.* at 503. The employer then made an offer of judgment pursuant to Fed.R.Civ.P. 68, and the employee accepted it. *Id.* After the settlement, the EEOC issued plaintiff a right-to-sue letter and the employee filed suit alleging a violation of Title VII. *Id.* Employer then filed a motion for summary judgment based on res judicata. *Id.* The district court granted the motion and employee appealed. *Id.* The Tenth Circuit explained that the employee argued "that claim preclusion should not bar her second suit because she was statutorily prohibited

---

4. There is no evidence that there is a compulsory counterclaim rule in proceedings before the career service board, or that plaintiff could maintain an ADA action in front of the career service board. Consequently, I only address whether plaintiff's claim is barred for failure to bring a compulsory counterclaim in the state district court case. I address, therefore, plaintiff's arguments why the he had no

duty to bring this claim before the career service board only to the extent that such arguments are relevant to the analysis of his failure to bring his ADA claim as a counterclaim in the state district court proceedings. (See Pl.'s Resp. at 9–12.)

5. *See* 42 U.S.C.A. § 2000e–5(f)(1) (West 1994 & Supp.2003).

from bringing her Title VII claim until she received her right-to-sue letter from the EEOC." *Id.* at 505. The Tenth Circuit rejected the employee's argument, following the numerous circuits that reject such arguments. *Id.* at 505–506. The *Wilkes* court explained that the employee's proper course of action was to "file[ ] her equal pay claim against the [employer] and then s[eek] a stay in the district court until completion of the EEOC administrative process. After receiving her right-to-sue letter, [the employee] could have added her Title VII claim to her initial lawsuit by amending her complaint." *Id.* at 506; *see also Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 40 (2d Cir.1992) ("plaintiff could have filed the section 1981 action and then requested a stay of the action pending the outcome of the EEOC administrative proceeding") (citing *Johnson v. Ry. Express Agency*, 421 U.S. 454, 465–66, 95 S.Ct. 1716, 1722–23, 44 L.Ed.2d 295 [1975]); *Churchill v. Star Enters.*, 183 F.3d 184, 192–94 (3rd Cir.1999) (applying the aforementioned rule to ADA claims).

Plaintiff sets forth virtually the same argument as the employee in *Wilkes,* except that plaintiff didn't file a compulsory counterclaim because he had not received a right-to-sue letter from the EEOC, as opposed to *Wilkes,* where the employee didn't amend her complaint to add a Title VII claim. Plaintiff asserts no reason why he could not have filed an ADA compulsory counterclaim in the state district court proceeding. State courts, like federal courts, have jurisdiction over ADA claims. *See Keil v. CIGNA*, 978 F.Supp. 1365, 1367 (D.Colo.1997). Indeed, "[w]hen a C.R.C.P. 106(a)(4) action is timely filed, public policy requires the joinder of all of the petitioner's claims in one action." *Powers v. Bd. of County Comm'rs of Larimer County*, 651 P.2d 463, 464 (Colo.App.1982). There is no reason, therefore, why the rule as set forth in *Wilkes* should not also apply to compulsory counterclaims.

Of course, the *Wilkes* rule relies upon federal law, and as discussed above, I must apply Colorado law to this issue. *Matsushita,* 516 U.S. at 373, 116 S.Ct. at 877; *Fox,* 112 F.3d at 456. Colorado courts have not directly addressed the issue of the preclusive effect of a party's failure to bring a claim or counterclaim because that party has yet to receive a right-to-sue letter. However, since the courts that have addressed this issue have overwhelmingly followed the reasoning of *Wilkes,* I assume that Colorado courts, if faced with this issue, would follow *Wilkes. See, e.g., Havercombe v. Dep't of Educ.*, 250 F.3d 1, 8–9 (1st Cir.2001); *Woods,* 972 F.2d at 40–41; *Churchill,* 183 F.3d at 193–94; *Rivers v. Barberton Bd. of Educ.*, 143 F.3d 1029, 1032–33 (6th Cir.1998); *Herrmann v. Cencom Cable Assocs., Inc.*, 999 F.2d 223, 225–26 (7th Cir.1993); *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 714–15 (9th Cir.2001); *Wilkes,* 314 F.3d at 505–506; *Jang v. United Tech. Corp.*, 206 F.3d 1147, 1149 (11th Cir.2000).

Plaintiff asserts that if I follow *Wilkes,* such a result "would be dire for employees [such as plaintiff, since e]mployees who successfully avail themselves of the speedy administrative remedy [i.e. the career service board] ... could invariably be deprived of their right to have violations of federal antidiscrimination laws redressed in Federal courts." (Pl.'s Resp. at 15.) To the extent that plaintiff argues that no court would redress plaintiff's ADA claims, this argument has been addressed and rejected in *Woods. Woods* explained that a plaintiff could either file suit and request a stay pending the outcome of EEOC proceedings or obtain a right-to-sue from the EEOC 180 days after filing the charge. *Woods,* 972 F.2d at 41. To the extent that plaintiff contends it would be unfair for him and others similarly situated to be denied access to a federal court as opposed to a state court, this argument, likewise,

has been addressed and rejected in the context of collateral estoppel.[6]

> Although the 'doctrine of collateral estoppel does not apply when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate the claim or issue, ... state proceedings need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause in order to qualify for the full faith and credit guaranteed by federal law.'

*Bolling v. City & County of Denver, Colo. By and Through McNichols,* 790 F.2d 67, 68 (10th Cir.1986) (quoting *Kremer v. Chem. Constr. Corp.,* 456 U.S. 461, 480–81, 102 S.Ct. 1883, 1897, 72 L.Ed.2d 262 [1982]). Moreover, "[t]here is no general equitable principle that will permit a court to refuse application of the claim preclusion doctrine on the grounds of unfairness or injustice to a party." 18 James Wm. Moore et al., Moore's Federal Practice § 131.24[6] (3d ed.1999).

Accordingly, plaintiff should have filed an ADA compulsory counterclaim in state district court and his failure to do so bars the present suit so long as the ADA claim arose out of the same transaction or occurrence that is the subject matter of defendants' state district court claim.

### b. Same Transaction or Occurrence

 As stated above, "[a] pleading shall state as a counterclaim any claim ... the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Colo. R. Civ. P. 13(a). "The accepted method for determining whether a claim arises out of the same transaction or occurrence as the first

claim is the logical relationship test: whether the subject matter of the counterclaim is logically related to the subject matter of the initial claim." *In re Estate of Krotiuk,* 12 P.3d at 304. For the reasons set forth in *Analysis* § 3. b. 2., *supra,* the ADA claim arises out of the same transaction and occurrence that is the subject matter of the state district court action. Accordingly, plaintiff's failure to bring their ADA claim as a compulsory counterclaim bars this action under the applicable rules of res judicata.

### 4. Other Matters

 Plaintiff also argues that under the doctrine of collateral estoppel, the determination of the career service board and/or the state district court should be used offensively in the present case to resolve defendants' liability. (Pl.'s Br. at 12.) If a case is resolved regarding res judicata, such a determination trumps any argument of collateral estoppel. *See Robi v. Five Platters, Inc.,* 838 F.2d 318, 327 (9th Cir.1988). I, therefore, will not address the issue of whether the determination of the career service board and/or the state district court has offensive collateral estoppel effect on this case. Similarly, because I resolve this case on the basis of res judicata, I will not address defendants' arguments regarding the substance of the lawsuit.

Defendants are entitled to summary judgment because this action is barred by res judicata due to plaintiff's failure to file an ADA compulsory counterclaim in state court.

### 5. Conclusions

Based on the foregoing it is therefore

---

6. Plaintiff is correct that under such circumstances, he could not have his claim heard in federal court because counterclaims on federal law do not provide a basis for removal.

*See, e.g., Metro Ford Truck Sales, Inc. v. Ford Motor Co.,* 145 F.3d 320, 326–27 (5th Cir. 1998); *Takeda v. Northwestern Nat'l Life Ins. Co.,* 765 F.2d 815, 822 (9th Cir.1985).

ORDERED as follows:

1. Plaintiff's Motion for Partial Summary Judgment (# 15–1) is DENIED.

2. Defendants' Motion for Summary Judgment (# 17–1) is GRANTED.

3. The clerk shall forthwith enter judgment in favor of defendants and against plaintiff, dismissing all claims with prejudice. Defendants may have its costs by filing a bill of costs within eleven days of the date of this order.